2015 IL App (1st) 130733
Nos. 1-13-0733, 1-13-1131, 1-14-1795, & 1-14-2118 (cons.)

THIRD DIVISION
June 30, 2015

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* Marriage of | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| FENG SHEN, | ) | |
| | ) | |
| Petitioner-Appellee and Cross-Appellant, | ) | No. 09 D 2957 |
| | ) | |
| v. | ) | |
| | ) | The Honorable |
| JANET SHEN, | ) | Jeanne M. Reynolds, |
| | ) | Judge Presiding. |
| Respondent-Appellant and Cross-Appellee. | ) | |

_____

PRESIDING JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Lavin and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1     This marriage dissolution appeal was brought by way of numerous appeals, which we consolidated, and numerous issues on appeal. For clarity, we summarize our holdings as follows.

¶ 2     First, the circuit court's provision regarding maintenance in the dissolution judgment that the wife's maintenance terminate on her sixty-sixth birthday under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2012)) was an abuse of discretion where there was no evidence in the record of the dissolution proceeding supporting the court's decision to award a limited duration of maintenance to the wife only up to the retirement

age of 66, and the evidence instead established that the wife would not be able to support herself and would require permanent maintenance. We reverse the maintenance order in the dissolution judgment and order that the circuit court amend the provision in the dissolution judgment awarding maintenance to the wife to award her permanent maintenance, with the termination factors under section 510(c) of the Act (750 ILCS 5/510(c) (West 2012)), and including the court's provision for review of the maintenance award if the wife attains an income of at least $45,000.

¶ 3    Second, the circuit court erred when it entered an order on October 12, 2011 that ordered the husband's 401(k) retirement account liquidated to, in part, satisfy interim attorney fees in contravention of *In re Marriage of Radzik*, 2011 IL App (2d) 100374, where the court held that retirement accounts are exempt under section 12-1006 of the Code of Civil Procedure (735 ILCS 5/12-1006 (West 2010)). We therefore must reverse this order, entered on October 12, 2011. As the wife sought reversal of this order but did not indicate what relief she sought concerning the use of the retirement funds to pay the attorneys, we remand for further proceedings and relief on remand.

¶ 4    Third, the court did not use the wrong legal standard in deciding to deny the wife's request for contribution to attorneys fees, as the Illinois Supreme Court continues to espouse the rule from *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005), that the spouse petitioning for contribution to attorney fees must show an inability to pay and the ability of the other spouse to pay, and this was the standard followed by the court. The evidence supported the husband also did not have the ability to pay fees and so the court's denial of the wife's request for contribution was not an abuse of discretion. We affirm the portion of the dissolution judgment denying the wife contribution to her attorney fees.

¶ 5        Fourth, we reject the wife's argument that the court's order requiring Janet to pay half of the child representative's fees was error because it was a "*de facto*" order that she pay the fees from her awarded half of the husband's retirement account because that was the only asset of value she was awarded in the judgment. The court did not in fact order payment of the child representative's fees from the retirement account funds but merely ordered that each party pay half of the fees, and the wife provided no support for this contention. We affirm the portion of the dissolution judgment requiring the wife to pay half of the child representative's fees.

¶ 6        Fifth, the provision in the dissolution judgment ordering that the parties' Florida time share be sold merely indicated priority of payment of the proceeds to the child representative first, and did not order the sale of the time share for the specific purpose of paying the child representative's fees. Moreover, section 506(b) of the Act (750 ILCS 5/506(b) (West 2010)), governing child representative's fees, serves a different purpose than the general attorney fees provision of section 508 (750 ILCS 5/508 (West 2010)) of the Act and, unlike section 508, allows payment from "any" source, including from "the marital estate." We affirm the provision in the dissolution judgment ordering that the parties' Florida time share be sold.

¶ 7        Sixth, because the issue of the trial court's award of the marital home to the husband may be moot due to foreclosure, and the wife did not provide any citations to the record or any facts responding to the issue of foreclosure, we cannot adequately address the wife's appeal of the portion of the judgment awarding the marital home to the husband. We decline the wife's request for us to exercise our power pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994). Rather, since the case is being remanded, the wife has an opportunity to file a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), with an affidavit and supporting facts, for determination by the circuit court.

¶ 8      Seventh, the trial court did not abuse its discretion in denying the husband's motion to modify maintenance based on his alleged change in employment status. The court did not err in its consideration of statutory factors where consideration of whether a change in employment status was made in bad faith is required by section 510(a-5)(1) of the Act. 750 ILCS 5/510(a-5)(1) (West 2010). The court also was well within its discretion under statute to consider any other factor it deemed equitable and just under section 510(a-5)(9) of the Act (750 ILCS 5/510(a-5)(9) (West 2010)), including the impact the husband's bad-faith change in his employment status had on the minor child's health care costs and to consider the husband's pattern of not paying support as part of the facts supporting its determination of bad faith. The manifest weight of the evidence also supported the trial court's decision not to credit the husband's treating physician's testimony of a lower back condition, where there was no objective evidence of such a condition other than the husband's own self-reporting of symptoms. We affirm the trial court's order denying the husband's petition to modify maintenance.

¶ 9                                   BACKGROUND

¶ 10      The parties, Feng Shen and Janet Shen, were married on July 21, 1990. The parties had three children: Xiuli Shen, born March 27, 1991; Matthew Shen, born February 7, 1992; and Andrew Shen, born March 3, 1996. Feng filed a petition for dissolution of the marriage on April 1, 2009. As of the date of the judgment for dissolution of marriage, Xiuli was 21 years old; Matthew was 20 years old; and Andrew was 16 years old and the only minor child subject to statutory child custody and support provisions.

¶ 11      On April 14, 2009, Janet filed a petition for temporary support and a petition for interim attorney fees. Janet's petition for temporary support sought child support and contribution from Feng for expenses related to the marital residence. On April 21, 2009, the case was transferred to

district 2. On May 19, 2009, Feng filed his response to Janet's petition for temporary support and petition for interim attorney fees. After holding a hearing, the court entered a temporary support enter setting Feng's unallocated support at $1,260 per month. The portion petitioning for Feng's contribution to the home expenses was entered and continued. After a second hearing, Feng was ordered to pay $1,000 per month toward the mortgage and equity line on the marital residence and was ordered to pay $1,500 to Janet's attorney for interim fees.

¶ 12    On May 3, 2010, the court, on its own motion, appointed a child's representative for the parties' minor son Andrew. There were numerous issues presented regarding Andrew, including Andrew's history of anxiety and other medical issues resulting in several hospitalizations, as well as excessive school absenteeism since the eighth grade, which resulted in beginning a home-schooling program, despite a January 12, 2010 court order to enroll Andrew in public school. Janet and Feng were ordered to pay Andrew's representative $1,500 each for his initial retainer.

¶ 13    Prior to trial, Janet filed for bankruptcy and retained new counsel. The parties agreed to waive the stay of the divorce proceedings.

¶ 14    A trial was held on July 14, 2010, through July 15, 2010, September 7, 2010, October 21, 2010, October 18, 2012, October 19, 2012, and October 23, 2012. Feng testified that in 2008 the parties' combined income was about $105,000, approximately $70,000 earned by Feng and $36,000 earned by Janet. Feng testified regarding his stock trading before and during the marriage, as well as other financial matters, including the values of various accounts, including his 401(k) account through his employer, Trader Joe's, where he worked as a manager. Feng also testified regarding various debts owed, including promissory notes to his father and sister for money Feng had borrowed to cover his expenses and the mortgage and home equity line of credit on the marital residence, and various credit card debts. Feng further testified regarding the

parties' minor child Andrew's education during 2008, his home-schooling during 2008-09, Andrew's psychological issues, Feng's general relationship with Andrew, and his visitation with the Andrew since the parties' separation. On cross-examination, Feng explained that he left the marital residence on January 3, 2009, after an incident between him and Janet during which he grabbed Janet's arm. Certain stipulations were also entered into the record.

¶ 15       Janet called Anna May Schadeck, who testified regarding her observations of Janet as a parent and Janet's relationship with Andrew, as well as her knowledge of Andrew's and Matthew's schooling and behavioral problems.

¶ 16       Janet also testified regarding her employment, the marital residence and her payments of the mortgages, including the mortgage and equity line of credit, her credit card debt, Feng's trading and investing, trips taken by Feng, her personal loans, her debts related to her bankruptcy proceedings, and her attorney fees. Janet testified about her role in Matthew's schooling and Andrew's home-schooling, the children's medical bills, social life, counseling, and Feng's relationship with them. Janet also testified about the parties' retirement accounts. Janet further testified that Feng had been violent with her and with Andrew in the past.

¶ 17       The child's representative for Andrew asked Janet about Andrew's grades and Matthew's education, behavior and schooling, and counseling for Andrew. The representative also questioned Janet about the bankruptcy proceedings as related to her expenses and income and expenses. The child's representative further questioned Janet regarding incidents where police were called to the marital residence.

¶ 18       Feng's counsel cross-examined Janet regarding her anticipated income and expenses after her bankruptcy, as well as the various incidents at the marital residence during which the police were called.

¶ 19    After a short recess on October 21, 2010, the court determined that the proceedings should be stayed pending Janet's bankruptcy case, despite the parties' agreement to continue with the proceedings. On May 19, 2011, the case was further stayed because Feng also filed for bankruptcy.

¶ 20    On October 12, 2011, the court entered an order that stated:

"For purposes of paying for the anticipated counseling [for Andrew] and interim attorney's fees, the Petitioner and the Respondent shall enter into a Qualified Domestic Relations Order, that shall distribute certain 401(k) plan funds that the Petitioner has acquired with Trader Joe's Company ***. *** [T]he amount of Sixty Thousand and xx/100 ($60,000.00) Dollars shall be paid to the Respondent as an early withdrawal. The funds, after setting aside money for the anticipated taxes *** shall be escrowed with Petitioner's [Feng's] Attorney's IOLTA account for the payment of counseling fees and the interim attorney's fees ***."

¶ 21    The October 12, 2011 order further provided that after the retirement funds are received into Feng's attorney's "IOLTA" account, the disbursements were as follows: $9,000 to the child's representative; $8,000 to Janet's attorney; and $19,750 to Feng's attorney. The remaining funds were to be placed in escrow with Feng's attorney to pay taxes on the early withdrawal from the 401(k).

¶ 22    Pursuant to the court's October 12, 2011, Janet and Feng entered into a separate stipulated qualified domestic relations order in accordance with the terms of the court's October 12, 2011 order. This order was entered on November 10, 2011 and stipulated only to the release of the funds in the Trader Joe's 401(k). Both Janet and Feng, as well as both of their attorneys, signed this stipulated qualified domestic relations order.

¶ 23    On January 12, 2012, after an extensive hearing on Andrew's medical conditions, which included a diagnosis of depression and agoraphobia, the court awarded Feng exclusive possession of the marital residence and temporary custody of Andrew and ordered that Janet vacate the residence. Janet and Matthew were ordered to vacate the marital residence within seven days. Feng's child support obligation and payment to Janet for the mortgage were terminated. Feng was ordered to pay the taxes and utilities on the martial residence. The order further provided that "the parties with their respective counsel shall determine what course of action should be taken as to the mortgages on the marital residence."

¶ 24    On February 7, 2012, Janet filed a petition for temporary maintenance, alleging that she was unemployed and that she was receiving unemployment benefits of approximately $1,052 per month. Janet further alleged that her unemployment benefits would decrease as a result of the January 12, 2012 order granting Feng temporary custody of Andrew. Janet alleged that because of her limited income, she could not obtain housing to rent. Janet requested $2,500 per month in maintenance. On February 7, 2012, Janet also filed a petition for interim attorney fees: $4,593.50 for costs due; and $5,000 in prospective fees.

¶ 25    After the parties' bankruptcy cases concluded, trial recommenced on October 18, 2012. Because Janet could not pay for an attorney, she appeared *pro se* on the October 19 and October 19, 2012 trial dates. On October 19, 2012, an order was entered quashing several subpoenas served by Janet. Transcripts of the proceedings from October 18, 2012 and October 19, 2012 are not part of the record on appeal because no court reporter was present.

¶ 26    On October 23, 2012, the court conducted an *in camera* examination of Andrew. The same date, the court entered an order requiring the parties to exchange proof of all unpaid

medical bills and to submit all bills and debts to the court. Ruling was set for December 21, 2012.

¶ 27    On December 11, 2012, Feng filed a petition for contribution to fees and costs from Janet pursuant to section 503(j) of the Act (750 ILCS 5/503(j) (West 2012)). Feng's petition requested that Janet pay $20,390.40 to Feng's attorney for unpaid fees or, alternatively, that Janet pay half of the aggregate ultimately determined final attorneys fees, expert's fees, and costs incurred by Feng. Feng's petition was denied on January 29, 2013. Feng does not appeal this order.

¶ 28    The court entered judgment for dissolution on January 29, 2013. The court found that Janet had worked for three years as a billing administrator earning approximately $30,000 per year and had worked part-time but was primarily the family's homemaker and that Feng's income was the primary source of support for the family. The court found that Janet had been unemployed since November 2011 and had no income as of the dates of trial in 2012. As of May 2012 Janet was homeless and living in her car or hotels. Janet's testimony was that her monthly expenses were in excess of $2,630 and consisted of: $1,200 for hotel stays; $250 per week for food; $60 four times a month for gas; $70 for car insurance; $20 for medical co-pays; and $100 for clothes for Andrew. Janet stated she was supported by personal loans and assistance from her friends.

¶ 29    The court found that Feng earned a gross income of $79,192 for 2011 and a gross income of $65,052 for the year 2012 through October 7, 2012. Feng's updated financial disclosures dated February 1, 2012 showed a net income of $4,650.96 and expenses of $4,745, resulting in a negative monthly cash flow. The monthly mortgage expense of $2,260 was not being paid as of October 2012.

¶ 30        The court found that "since May 2012, JANET has been homeless and living in her car or hotels" and that she was living on personal loans and help from her friends. The court found that Janet's future employment was "uncertain." The court also found that, after being ordered to keep job diaries, Janet had kept some but not all required job diaries and that Janet admitted that she had not actively sought employment.

¶ 31        The court awarded Janet maintenance in the amount of $1,300 per month, "until the first to occur of [Janet's] death, remarriage, co-habitation with another person on a continuing resident conjugal basis or her sixty-sixth birthday, the age upon which she is eligible for full social security benefits."

¶ 32        The judgment granted custody of Andrew to both parties, with Feng having residential custody and final decision-making authority over education and medical issues. The court found that the parties were in agreement that Andrew should stay in the marital residence and the current school district for the sake of Andrew's emotional stability.

¶ 33        The court reserved the issue of child support until Janet was employed and ordered Janet to maintain a job diary.

¶ 34        The court awarded Feng exclusive ownership of the marital residence. Feng was made solely responsible for payment of the mortgages, utilities, taxes, and insurance on the property.

¶ 35        The court awarded each party half of Feng's Trader Joe's 401(k) retirement plan, valued at $80,429.81 as of September 30, 2012. Feng was ordered to ensure that a qualified domestic relations order was entered within 60 days of the judgment for dissolution to properly transfer Janet's share to her.

¶ 36    The court ordered that the parties' time share in Florida "shall be listed for immediate sale and sold" and that "[t]he sales proceeds shall first be applied to the Child Representative fees and thereafter to the parties' nonreimbursed medical expenses for the children."

¶ 37    Regarding the child representative's fees, the court further ordered:

"The balance of the escrow and any proceeds from the parties Florida time share shall be paid to the Child Representative toward his fees. Upon the final submission of the Child Representative's fee petition, each party will be equally or 50% each responsible for payment of the Child Representative's fees."

¶ 38    The judgment also ordered that the child's representative's fees were to be paid from any remaining money held in escrow after the taxes were paid on the withdrawal taken pursuant to the November 10, 2011 qualified domestic relations order.

¶ 39    Each party was awarded the bank accounts in his or her own name.

¶ 40    The court awarded Feng his automobile and the automobile being used by the parties' daughter, Xiuli. The court awarded Janet the automobile she was using.

¶ 41    The judgment left each party responsible for the debts in his or her own name, with Feng being assigned a greater percentage of the remaining marital debt. The parties stipulated that Feng owed $41,000 in credit card debt and for personal loans, and that Janet owed $85,000 in credit card debt and more than $8,000 in personal loans.

¶ 42    Regarding attorney fees, the court stated that Janet owed approximately $28,000 in attorney fees and had asked for a contribution from Feng to her attorney fees. The court found that Janet did not have the ability to pay the fees but found that Feng also did not have the ability to pay Janet's attorney fees either and thus ordered Janet to pay her own fees.

¶ 43    On February 5, 2013, the child representative filed a petition for fees.

¶ 44 On February 27, 2013, Janet filed a notice of appeal from the judgment of dissolution.

¶ 45 On February 28, 2013, Feng filed a motion to reconsider the judgment pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2012)), arguing that the award of maintenance to Janet was against the manifest weight of the evidence.

¶ 46 On March 5, 2013, an agreed order was entered awarding the child representative fees in the amount of $18,364.83 in costs, with each party to pay 50%. The order specified that "[w]hile the amount is agreed, the allocation may be an issue on appeal." The March 5, 2013 order also set a briefing schedule for Feng's motion to reconsider the judgment's maintenance award. The March 5, 2013 order did not contain Illinois Supreme Court Rule 304(a) language. See Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 47 On March 13, 2013, Janet filed an emergency petition for termination of joint custody and award of sole custody of Andrew to Janet, temporary sole custody and possession, and to suspend Feng's visitation. The basis of the petition was an alleged act of domestic violence that occurred between Feng and Andrew at the martial residence wherein Feng threw a flower pot and garbage can at Andrew. The flower pot struck Andrew and Feng was arrested by the Streamwood police. The circuit court found that the matter was not an emergency and continued Janet's petition. On March 13, 2013, Janet also filed her response to Feng's motion to reconsider.

¶ 48 On April 3, 2013, before resolution of Feng's motion to reconsider the judgment, Janet filed a second notice of appeal from the agreed order of March 5, 2013 that the child representative's fees be split between the parties and also appealing from the January 29, 2013 judgment.

¶ 49        On April 15, 2013, a qualified domestic relations order was entered pursuant to the terms of the judgment for the transfer to Janet of 50% of the funds in Feng's Trader Joe's 401(k) retirement plan.

¶ 50        On April 15, 2013, the court also conducted a hearing on Feng's motion to reconsider the judgment. Feng argued that the award of maintenance to Janet should not have been permanent but should be reviewable because Janet was capable of working. The court entered an order on April 15, 2013 modifying the judgment's maintenance award provision, making it reviewable upon Janet's earning $45,000 in gross income per year. The amount of monthly maintenance and the termination terms of the order remained unmodified. The April 15, 2013 order provided that the case was continued to April 25, 2013 for entry of a withholding order.

¶ 51        The April 15, 2013 order did not contain Illinois Supreme Court Rule 304(a) language. See *id.* Nevertheless, on April 19, 2013, Feng filed a notice of appeal from the April 15, 2013 order.

¶ 52        On April 22, 2013, a plenary order of protection was entered against Feng and protecting Andrew in the criminal case against Feng based on the domestic violence incident against Andrew in the marital home. Feng was ordered to stay away from Andrew and was prohibited from physically abusing, harassing, or intimidating Andrew and from interfering with Andrew's personal liberty, effective until April 21, 2014. Feng agreed to the entry of the order of protection and did not stand trial.

¶ 53        On April 25, 2013, the circuit court entered a withholding order authorizing the payment of $15,059 to the Internal Revenue Service for the taxes owed on the 2011 disbursement from Feng's Trader Joe's retirement plan. The court order also provided that the remaining balance of the escrow account was to be paid to the child representative per the dissolution judgment.

¶ 54    The court also entered a separate order on April 25, 2013 regarding Janet's emergency petition for termination of joint custody, awarding sole custody of Andrew to Janet, thereby modifying the child custody provisions in the judgment of dissolution, given the order of protection against Feng entered in criminal court protecting Andrew. The issue of Feng's visitation with Andrew was reserved and the child representative was discharged. Feng did not appeal this order.

¶ 55    On May 9, 2013, we entered an order consolidating all the appeals filed by the parties. Feng's April 19, 2013 appeal was initially consolidated with the prior appeals and allowed to stand as a cross-appeal, but later this case was severed and dismissed for want of prosecution.

¶ 56    On May 14, 2013, Janet filed a petition to set child support. The petition was continued.

¶ 57    On September 17, 2003, Janet filed a motion to enforce the dissolution judgment in the circuit court, alleging that Feng had stopped paying the utilities on the former marital residence.

¶ 58    On December 2, 2013, Feng filed a petition to modify maintenance in the circuit court, raising several modification factors under section 510(a)(5) of the Act, including that he left his employment at Trader Joe's because of his alleged inability to work due to his health condition, which was severe back pain, which he argued was a change in circumstance to modify maintenance. Feng also argued that Janet did not seek to be gainfully employed. Feng further alleged that the marital home was "in foreclosure and will soon be lost in those proceedings."

¶ 59    On January 14, 2014, Janet filed a response in opposition to Feng's motion to modify maintenance, arguing that Feng's voluntary change in employment was not in good faith and that it was an attempt to evade his maintenance obligation. The same date, Janet also filed a petition for indirect civil contempt for Feng's failure to pay maintenance for November and December 2013.

¶ 60     The court held a hearing and heard testimony on April 16, 2014, on Feng's petition to modify maintenance and on Janet's petition for indirect civil contempt for failing to pay maintenance and Janet's petition for child support, which the parties agreed to hear concurrently.[1] The court issued a rule to show cause on Feng at the start of the hearing, which was returnable *instanter* by way of the contempt hearing.

¶ 61     The parties stipulated that the guideline amount for statutory child support would be $632 per month, which was based on Feng's income at Trader Joe's. Feng's defense to child support was that Andrew was emancipated, but the court rejected this defense.

¶ 62     Feng first called Janet as an adverse witness. Janet testified that at the time of the hearing she had lived in Hoffman Estates, Illinois, since August 15, 2013 and that she paid $1,020 per month in rent. Counsel for Feng examined Janet based on her financial affidavit, which was admitted at trial. According to the affidavit, at the time of trial Janet was unemployed but had $5,914 in monthly living expenses for her needs. Janet testified that, to meet her monthly financial needs for the year of 2013, she borrowed $75,000 from Anna May Schadeck. Janet also testified that she received maintenance from Feng and that she received $2,000 from her sister, who lives in Australia. Janet also testified regarding her work history from the January 29, 2013 date of the judgment for dissolution of marriage. Janet testified that she was currently unemployed and that the last time she worked was for one day on February 12, 2014, through an assignment from a temporary work agency, and from January 15, 2014 to February 12, 2014 on another temporary assignment for $11.50 per hour. Janet testified that she had no employment from the January 29, 2013 entry of judgment for dissolution of marriage until October 10, 2013.

___

[1] The court also conducted a hearing and ruled on Janet's petition to set child support, which is not at issue in this appeal.

¶ 63          Feng also testified. Feng testified that he resides in Hoffman Estates with his girlfriend, Hong Zhi Liu. Feng also testified regarding his financial affidavit that was admitted at trial. Feng testified that during the course of the marriage and for 11 months following the judgment of dissolution he was employed at Trader Joe's. On the date of dissolution, Feng held the title of "operational merchant." Feng testified that a substantial part of his job was the lifting and moving of heavy pallets, for approximately 50% to 60% of his work time. Feng worked for 9.5 hours a day, 5 days a week. Feng testified that he paid his maintenance obligation to Janet up until he stepped down to a part-time position in November 2013 because he opened a therapeutic massage business in Barrington, Illinois. Feng testified that he was in constant back pain as far back as 2010 and had seen several chiropractic and medical specialists for his back problems between 2010 and 2012 but worked during this time period because he "did not have a choice of not working at all." Feng testified that if he did the heavy lifting required in his previous position at Trader Joe's he would have severe back pain and that he was having difficulty doing his job even part-time in November 2013 due to his condition. Feng testified that at his massage business he does not perform the massages and is able to work there because there is no physical work involved. Feng admitted that no doctor ever told him that he could not work at Trader Joe's. Feng never asked Trader Joe's for any accommodation for his back issues. The position to which he demoted himself, operational manager, was actually more physically demanding than his previous higher position as mate. Feng ultimately resigned from Trader Joe's and began his massage business, signing a lease for the new business in November 2013. Feng testified that he had no income from his new job and that the prospects are not good. Feng recently applied for a job back in the food industry at Maggiano's Food Market. Feng further testified that he believed

Andrew's hospitalizations were unnecessary and that his medical conditions were not real but, rather, were attention-seeking behaviors.

¶ 64     Feng offered into evidence the evidence deposition of Dr. Richard Bryan, taken on April 2, 2013 at Dr. Bryan's office in Chicago, Illinois, which was admitted into evidence without objection from Janet. Dr. Bryan's qualifications as an expert in the field of chiropractics was stipulated to by Janet. Dr. Bryan first saw Feng on October 15, 2010 for left shoulder and neck issues. Feng had pain in his left shoulder and decreased range of motion in his neck. Dr. Bryan also saw Feng on October 22, 2010 and October 29, 2010. Dr. Bryan prescribed neck and shoulder exercises to strengthen those areas. On January 11, 2011, Dr. Bryan treated Feng with strengthening exercises and manipulations. Dr. Bryan also treated Feng on: January 15, 2011; March 10, 2011; March 18, 2011; June 10, 2011; and September 27, 2011. During each visit Dr. Bryan treated Feng with exercises and manipulations. Dr. Bryan testified that Feng was still complaining of lower back pain in September of 2011. There was a three-year gap in treatment. Dr. Bryan next saw Feng on April 2, 2014 and Feng's condition was worse than it had been in September 2011. Dr. Bryan testified within a reasonable degree of chiropractic certainty that Feng had "a condition of the lower back," and that he "has symptoms of a disk bulge." Dr. Bryan reviewed an X-ray taken November 5, 2013, which was ordered by Feng's family practitioner, but according to Dr. Bryan's report the X-ray did not show any injury or condition. Dr. Bryan recommended that Feng have an MRI, but Feng did not do so. Dr. Bryan further testified that he, in part, relies on subjective reporting of symptoms. In 2010 and 2011, Feng regularly followed his treatment and advice in 2010 and 2011, but when he examined Feng in January 2014, Feng did not undertake any of his suggested treatment.

¶ 65    At the conclusion of the hearing, the court made the following preliminary findings regarding Feng's decision to change his employment and request to reduce maintenance:

"The Court is concerned about the timing of such, especially in light of the fact that for 2012 and 2013 he earned significant, significant funds. There is no testimony that he ever requested an accommodation from Trader Joe's to assist him in his back injury. In fact, he voluntarily demoted himself, by his own admission ***. I'm not quite sure why he would do that. It doesn't make any economic sense, full well knowing that he had a maintenance obligation,. And at the time he did this, he also had an obligation to support the child, whether the child was living with him or the child was living with his mother, because both parents have an absolute obligation to support their child. Again, the Court is extremely concerned on how the child's health insurance was allowed to lapse. I find that just deeply troubling because Mr. Shen was absolutely aware of Andrew's extensive medical condition. This is not a child who has been able to function on his own. The issue of Andrew's progress and treatments and abilities to help himself have been the subject of much litigation. Mr. Shen has been intricately involved in discussions with therapists, psychiatrists. There's been extreme issues with homeschooling. He's been involved with the school, with the IEP that was developed for this child. For Mr. Shen to take the position that somehow the child is intentionally causing this issue is beyond the Court's comprehension. It is also beyond the Court's comprehension that Mr. Shen hasn't paid in a dime in child support, not one dime. Child support will be ordered retroactive to the date of filing. By the parties' stipulation, the amount of $5,056, which would be the statutory amount through at least May of 2013 through the end of the year while he was still working at Trader Joe's. The amount of income that may or may not be imputed to

him will be reserved so the Court can take a look to see what his earning capabilities are. The Court is deeply troubled by Mr. Shen embarking on a speculative venture. And even his testimony that he doesn't go into the business all the time, that he has never drawn a salary from that, he has expenses of himself in excess of $3,000 per month, per his own 13.3 [affidavit], and very little, if any, debt set forth, so somehow he is able to pay all his personal expenses as well as all of his business expenses. He doesn't have to take a salary. And yet, he was aware when he voluntarily terminated his employment that he had a maintenance obligation and very well had a child support obligation."

¶ 66    Concerning Dr. Bryan's testimony specifically, the court stated that it had "severe concerns about the adequacy" of Dr. Bryan's opinions. Dr. Bryan's testimony was not based on an MRI, and Dr. Bryan confirmed that the X-ray of Feng's "low back was unremarkable" and showed no injury. Meanwhile, Dr. Bryan relied on Feng's self-reporting during a short consultation with Feng. The court further found that Dr. Bryan's treatment of Feng was "completely inconsistent," and that there was a two-year and four-month period when Dr. Bryan did not see Feng at all. The court expressed "serious concerns" about Dr. Bryan's opinion and stated it gave "very little, if any, weight to Dr. Bryan's testimony." The court concluded that it "does not find Mr. Shen's claim that he was physically impaired rendering him incapable to work at Trader Joe's to be credible." The court further found that Feng's voluntary change in employment was not in good faith and specifically found it to be in "bad faith." The court explained that Feng had "not complained of back pain during the divorce proceedings" and "continued at the same level of employment at Trader Joe's during the divorce. It was only after the judgment was entered that he voluntarily terminated that employment."

¶ 67    The court entered a written order on April 16, 2014, which provided as follows:

"This cause coming on to be heard for trial on: (1) Janet's petition to set child support; (2) Janet's petition for rule to show cause for non-payment of maintenance; and (3) Feng's petition to modify maintenance, both parties appearing through counsel, the court having conducted an evidentiary hearing, and having made certain preliminary findings on the record made in open court which are incorporated into this order, and being otherwise fully advised;

IT IS HEREBY ORDERED:

1. Janet's petition to set child support is granted, retroactive to the date of filing. Feng Shen shall pay $5,056 to Janet Rizon immediately. Said sum representing guideline child support from the date of filing through December 2013. Feng shall pay an additional $2,747 which shall immediately be placed into escrow with Janet's attorney;

2. Further ruling on the petition to set child support and ruling on Feng's petition to modify maintenance and Janet's petition for rule is set for May 20, 2014 at 11:00 a.m.;

3. Upon conclusion of the hearing, Feng advised his attorney and the court that the $7,803 tax refund (which are the funds referenced in paragraph 1 of this order) is located in a safe deposit box at Chase Bank in Schaumburg. This is contrary to his sworn trial testimony that the funds were located in his home. Funds shall be delivered to offices of Lake Toback [Janet's counsel] by 11 am tomorrow."

¶ 68    The trial court ruled on the petition to modify maintenance and the petition for indirect civil contempt on May 20, 2014, finding that "both parties were well aware [that] their son, Andrew had special needs and struggles with severe anxiety and mental disorders requiring numerous hospitalizations, including the recent incidents and hospitalizations required on November 20, 2003 and March 7, 2014." The court further found that Feng "made no

contribution to Andrew's expenses for 2014 that the Court is aware of or since the date he voluntarily transferred custody of Andrew to Ms. Rizon." The court found that Feng "did not testify as to any physical injuries or conditions that prevented his full-time employment during the course of the parties' dissolution trial." The court found that despite Feng's claim of injury at the April 16, 2014 hearing, "he did continue working, and he was aware that he had an obligation to support Janet and to pay child support." The court further found that Feng's massage business was "a completely speculative venture," which he had "used $12,000 in funds" to establish. The court found that Feng voluntarily resigned from his Trader Joe's employment in December 2013. The court stated it did "not find it a mere coincidence that he [Feng] had no income from his new job, and that the prospects are not good."

¶ 69        The court entered an order on May 20, 2013 denying Feng's motion to modify maintenance and granting Janet's petition to hold Feng in indirect civil contempt and setting purge amounts. The court ordered payment of the maintenance arrearage of $3,889 to Janet to purge the contempt and ordered payment of child support arrearage.

¶ 70        Feng filed a notice of appeal on June 13, 2013, seeking reversal only of the court's order of May 20, 2014 denying Feng's motion to modify maintenance.

¶ 71        On June 24, 2014, the court entered an order memorializing partial payment of the arrearage by Feng reflecting that Janet voluntarily withdrew her petition to enforce the judgment for dissolution.

¶ 72        Feng filed another notice of appeal on July 14, 2014, appealing from the order entered on June 24, 2014. Feng stated in this notice of appeal that "[t]he trial court's June 24, 2014 order now made final for purposes of appeal the trial court's denial of the Petitioner's Motion to

Modify Maintenance on May 20, 2014." Feng stated in this notice of appeal that he continued to seek reversal of the court's denial of his motion to modify maintenance.

¶ 73    We consolidated Feng's 2014 appeals.

¶ 74    We then subsequently consolidated all the cases.

¶ 75                                    ANALYSIS

¶ 76    Janet argues that the court erred in entering the following provisions in the dissolution judgment entered on January 29, 2013:  (1) the court erred in ordering that her maintenance terminate on her sixty-sixth birthday; (2) the court erred when it ordered interim attorney fees paid from Feng's retirement account at Trader Joe's; (3) the court used the wrong legal standard in deciding to deny Janet's request for contribution to attorneys fees; (4) the court erred in its order granting the child representative fees in requiring Janet to pay half of the child representative's fees because it is a *de fact*o order that she pay it from a retirement account because that was the only asset of value she was awarded in the judgment; (5) the court erred in ordering the sale of the Florida time share to pay the child representative's fees because under the attorney fees provision of section 508 of the Act a court cannot order payment of fees from the marital estate; and (6) the court erred in its order granting ownership and exclusive possession of the former marital residence to Feng.

¶ 77    Feng agrees with Janet on her first issue and likewise appeals from the court's provision for Janet's maintenance in the dissolution judgment. Feng also appeals from the order of May 20, 2014 denying his petition to modify maintenance. Feng argues that the court did not consider the relevant factors as set forth in section 510(a-5) and instead considered Feng's decision to change careers as an improper and irrelevant factor. Feng also argues that the trial court's decision to not

give any weight to the testimony of Dr. Bryan was an abuse of its discretion and was against the manifest weight of the evidence.

¶ 78      We consolidated the parties' appeals. We address Janet's arguments first in sections I through VI and then we address Feng's argument regarding his appeal from the court's order denying his motion to modify maintenance in section VII.

¶ 79                    I. Termination of Maintenance on Janet's Sixty-sixth Birthday

¶ 80      Janet first argues that the court erred in ordering in the dissolution judgment (entered on January 29, 2013) that her maintenance terminate on her sixty-sixth birthday. We recognize that it is not for this court to reweigh the statutory factors, and absent an abuse of discretion, we will not substitute our judgment for that of the trial court. *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 26 (citing *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1064 (2005)). "The trial court has discretion to determine the propriety, amount, and duration of a maintenance award." *In re Marriage of Reynard*, 344 Ill. App. 3d 785, 790 (2003). "A clear abuse of discretion occurs when 'the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000). "Under the abuse of discretion standard, the question is not whether this court might have decided the issue differently, but whether any reasonable person could have taken the position adopted by the trial court." *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 708 (2006).

¶ 81      Janet argues that the order for maintenance in the dissolution judgment is "for monthly payments for an indefinite and unknown period of time" and therefore is not maintenance in gross but periodic maintenance. Janet argues that the court erred as a matter of law in ordering that her periodic maintenance terminate on her sixty-sixth birthday, absent agreement by the

parties, because the court awarded periodic maintenance but deviated from the statutory maintenance termination events of death, remarriage and cohabitation found in section 510(c) of the Act (750 ILCS 5/510(c) (West 2012)), and only an award of maintenance in gross can deviate from these termination events. Janet argues that for traditional periodic maintenance, a court can only impose the termination events in section 510(c) and cannot impose any other termination event.

¶ 82        Feng also appeals from the maintenance provision in the dissolution judgment and agrees that the court did not award maintenance in gross, and that the court erred in awarding Janet maintenance until her sixty-sixth birthday because it did not follow the standards set forth in section 510(c). Feng further argues that the court should have entered an order making any maintenance order reviewable after a period of time pursuant to the factors in section 510(a-5) and requests that the orders regarding maintenance be reversed and that the matter be remanded to the trial court for further evidentiary hearings.

¶ 83        Section 510(c) provides the following:

> "(c) Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." *Id.*

¶ 84        The four common types of maintenance included in a final judgment are: (i) permanent maintenance (indefinite in duration); (ii) rehabilitative maintenance for a fixed term (terminates on the term's end or the occurrence of some event); (iii) rehabilitative maintenance (subject to a set review date); and (iv) maintenance in gross (specific, nonmodifiable sum, usually in lieu of

property). "Permanent" does not mean everlasting; a better description would be "indefinite." An award of permanent maintenance may be modified or terminated either by agreement or as provided in section 510(c) of the Act. See *In re Marriage of Culp*, 341 Ill. App. 3d 390, 397 (2003) (burden of proving change in circumstances to justify termination or modification on paying party); *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 833 (1994) (permanent maintenance appropriate "where it is evident the recipient spouse is either unemployable or employable only at an income considerably lower than the standard of living established during the marriage").

¶ 85       The judgment specifically states that Janet is to receive "permanent maintenance," but the trial court included a termination event—her sixty-sixth birthday when "she is eligible for full social security benefits"—in addition to the statutory events. See 750 ILCS 5/510(c) (West 2012).

¶ 86       The parties agree that the maintenance arrangement ordered by the trial court, as a matter of law, does not constitute maintenance in gross. See *In re Marriage of Freeman*, 106 Ill. 2d 290, 298 (1985). We agree. What distinguishes maintenance in gross is its definite sum and vesting date. See *In re Marriage of D'Attomo*, 2012 IL App (1st) 111670, ¶ 24 (maintenance in gross involves "a definite total sum upon the entry of the decree or a definite total sum in installments over a definite period of time" (quoting *In re Marriage of Mass*, 102 Ill. App. 3d 984, 994 (1981))). Instead the parties, again in agreement, assert that the trial court ordered permanent maintenance, but erroneously deviated from the statutory termination events by providing that Janet's maintenance end on her becoming fully entitled to social security benefits. We agree.

¶ 87       "A spouse should not be required to lower the standard of living established in the marriage as long as the payor spouse has sufficient assets to meet his needs and the needs of his

former spouse." *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1044 (2008) (permanent maintenance may be reduced when wife nearly eligible for retirement benefits as teacher where total amount remained substantially unchanged). Here, however, the trial court terminates maintenance without knowing anything about Janet's or Feng's financial circumstances at the time Janet reaches age 66, many years in the future. Terminating in this manner violates section 510(c), as a matter of law. Whether permanent maintenance is still required when Janet becomes social security eligible should be a matter to be decided at that time and not now. Trial judges cannot gaze into a crystal ball and foresee what the future holds for the parties. This explains why permanent maintenance is always modifiable or terminable should there occur a substantial change in circumstances.

¶ 88 Having determined that the trial court erred when it ordered Janet's maintenance to terminate on her becoming social security eligible, we disagree with Feng that the appropriate relief would be for us to reverse and remand for a further evidentiary hearing on maintenance. As Janet observes, under Supreme Court Rule 366(a)(5), we may strike the erroneous termination event without further hearing before the trial court. No new hearing on maintenance is warranted and would be a waste of judicial resources.

¶ 89 II. Interim Attorney Fees Order

¶ 90 Janet argues that the court erred when it entered the October 12, 2011 order, ordering that interim attorney fees be paid from Feng's 401(k) at Trader Joe's, relying on *In re Marriage of Radzik*, 2011 IL App (2d) 100374, where the court held that retirement accounts are exempt under section 12-1006 of the Code of Civil Procedure (735 ILCS 5/12-1006 (West 2010)) from orders pertaining to attorney fees and cannot be ordered liquidated to pay attorney fees. Janet

argues that, similar to *Radzik*, the trial court had no statutory authority to order the liquidation of Feng's Trader Joe's 401(k) to pay attorney fees.

¶ 91        "The trial court's decision to award attorney fees is generally reviewed for an abuse of discretion." *In re Marriage of Nash*, 2012 IL App (1st) 113724, ¶ 15 (citing *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 45). "However, to the extent an appeal from the award of attorney fees 'hinges on issues of statutory construction and constitutionality, our standard of review is *de novo*.' " *Id.* (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001)).

¶ 92        We agree with Janet and hold that the court improperly ordered the liquidation of Feng's Trader Joe's 401(k) to pay interim attorney fees, in contravention of *Radzik* and section 12-1006 of the Code of Civil Procedure, and we reverse the court's order of October 12, 2011.

¶ 93        We note that on appeal Janet seeks only reversal of the October 12, 2011 order and does not specify any further form of relief if the attorneys were already paid from these funds. We therefore remand the case to the circuit court for proceedings consistent with our holding, where Janet can seek further relief due to the erroneous entry of the October 12, 2011 order.

¶ 94                          III. Contribution to Attorney Fees

¶ 95        Next, Janet argues that the court erred in denying any contribution from Feng to her attorneys fees because it applied the wrong standard in stating that it must be established that "the party requesting the attorneys' fees has an inability to pay, and that the other party has the ability to pay." Janet argues this is a misstatement of the law and "appears nowhere in any statute." Janet also argues that the court's ultimate determination was an abuse of discretion where Feng has a superior ability to pay attorneys fees and that the denial of any contribution from him was error.

¶ 96    "[A] trial court's decision to award or deny fees will be reversed only if the trial court abused its discretion." *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). The trial court abuses its discretion when it applies an improper legal standard. *Rockford Police Benevolent & Protective Ass'n v. Morrissey*, 398 Ill. App. 3d 145, 154 (2010). An abuse of discretion also occurs "when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 97    The court found and ordered the following:

"JANET has retained five different law firms to represent her in this proceeding and paid in excess of $19,000 to her attorneys. Attorneys' fees owed by JANET were discharged during her bankruptcy proceeding. An additional $28,000 remains owing. JANET has asked for a contribution to her attorney's fees. Generally, each party is responsible for their own attorney's fees. When a court does award contribution, it must assure that the fees are reasonable through an analysis of the criteria enumerated in section 503. In determining if a contribution award is warranted, it is not necessary that the party requesting contribution be destitute or divest or exhaust their financial resources. *In re Marriage of Pond*, 379 Ill[.] App. 3d 982 *** (2008). However, in order to prevail on an award of attorney's fees, it must be established that the party requesting the attorney's fees has an inability to pay, and that the other party has the ability to pay. Although no actual retainer agreements of invoices were submitted by JANET, it is clear that she does not have the ability to pay her own attorneys fees. Although FENG KUI is working, he also has his own attorney's fees to be paid as well as he has been assigned a greater percentage of the remaining marital debt. FENG KUI does not have the ability to pay JANET's

attorneys fees either. JANET will be responsible for payment of her own attorney's fees and costs."

¶ 98    Janet argues that the court applied the wrong legal standard in stating that "in order to prevail on an  award of attorney's fees, it must be established that the party requesting the attorney's fees has an inability to pay, and that the other party has the ability to pay." Janet also argues that the court's ultimate determination regarding attorney fees and denying her contribution was against the manifest weight of the evidence.

¶ 99    We find the court did not apply the wrong legal standard. The primary obligation for the payment of attorney fees rests on the party on whose behalf the services were rendered. *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 941 (1991). Under section 508(a) of the Act, the trial court may order a party to contribute a reasonable amount of the opposing party's attorney fees. 750 ILCS 5/508(a) (West 2010). But the spouse seeking the contribution must establish his or her inability to pay and the other spouse's ability to pay. *Schneider*, 214 Ill. 2d at 174. A party has the financial inability to pay attorney fees if the payment of the fees would strip that party of his or her means of support or undermine the party's financial stability. *Id.* A contribution award is based on the criteria for the division of marital property and, where maintenance has been awarded, the criteria for an award of maintenance. 750 ILCS 5/508(a), 503, 504 (West 2010). The criteria include the property awarded to each spouse, their incomes and present and future earning capacities and "any other factor that the court expressly finds to be just and equitable." See 750 ILCS 5/508(a), 503(d), 504(a) (West 2010).

¶ 100    Janet relies on two Fourth District Appellate Court cases in support of her argument that the court applied the wrong legal standard in requiring a showing of the petitioning spouse's inability to pay with a showing of the other spouse's ability to pay: *In re Marriage of Haken*, 394

Ill. App. 3d 155, 162 (2009); and *In re Marriage of Price*, 2013 IL App (4th) 120155, ¶ 39. The court in *Haken* criticized the rule requiring a showing of inability of the petitioning spouse to pay/ability of the other spouse because the rule was not explicitly in the statute. The court stated that "[s]ome courts have repeated language from older cases" and "fail to note the language added to section 508(a) in 1996" that "[a]t the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of [s]ection 503." *Haken*, 394 Ill. App. 3d at 162 (quoting 750 ILCS 5/508(a) (West 1998)). The court in *Price* followed this holding in *Haken*. See *Price*, 2013 IL App (4th) 120155, ¶ 39 ("[T]his court has concluded a party seeking contribution to attorney fees under section 508(a) of the Dissolution Act must no longer show an inability to pay or the other spouse's ability to pay as no such requirement is contained in the statute." (citing *Haken*, 394 Ill. App. 3d at 163)).

¶ 101     But *Schneider* was decided by the Illinois Supreme Court in 2005, well after the 1996 amendment to the Act, and so the supreme court continues to adhere to long-standing precedent that a spouse petitioning for contribution to attorney fees must show an inability to pay and the ability of the other spouse to pay.

¶ 102     We note also that the statute *does* contain a provision requiring consideration of the financial status of the parties, in the very first sentence of section 508(a):

> "§ 508. Attorney's Fees; Client's Rights and Responsibilities Respecting Fees and Costs.
>
>      (a) The court from time to time, after due notice and hearing, and *after considering the financial resources of the parties*, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." (Emphasis added.) 750 ILCS 5/508(a) (West 2010).

¶ 103         The statute itself thus *does* require consideration of the financial resources of the parties. The Fourth District Appellate Court did not mention this provision in the statute in either *Haken* or *Price*. Given that there is supporting language in the statute, and that the supreme court continues to espouse the rule even after the amendment to the statute, the holdings of *Haken* and *Price* are based on a faulty premise.

¶ 104         Recently in *In re Marriage of Patel*, 2013 IL App (1st) 112571, we noted the Fourth District's disagreement with precedent, but we followed the Illinois Supreme Court's continued adherence in *Schneider* to the long-standing rule. *Id.*, ¶ 113. We continue to follow the Illinois Supreme Court's precedent and decline Janet's request to follow the Fourth District's holdings. The trial court in this case recited and applied the correct standard in denying Janet contribution to her attorney fees in the dissolution judgment.

¶ 105         The court's finding that neither party had the ability to pay also was not an abuse of discretion. Feng's monthly cash flow was negative. The evidence supports the trial court's specific conclusion that Feng, while he was working, also did not have the ability to pay Janet's attorney fees.

¶ 106         While Janet argues that her award of a one-half interest in Feng's Trader Joe's retirement account should not be considered, she acknowledges that the relative financial circumstances of the parties must be considered. Again, Janet's argument is erroneous both factually and legally. Factually, the provision denying contribution in the dissolution judgment (section 9(f)) did not even mention the award to Janet of half of Feng's Trader Joe's 401(k). Legally, section 508(a) provides that costs may be awarded from the opposing party in accordance with subsection (j) of Section 503. 750 ILCS 5/508(a) (West 2010). Section 503(j) in turn provides that "[a]ny award of contribution to one party from the other party shall be based on the criteria for division of

marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504." 750 ILCS 5/503(j)(2) (West 2010). Thus, the same criteria regarding the division of marital property thus must be considered in determining a request for contribution to attorney fees.

¶ 107    The court did not err in its recitation and application of the legal standard and did not abuse its discretion in its determination denying Janet contribution for her attorney's fees. We thus affirm the portion of the dissolution judgment denying Janet contribution for her attorney fees.

¶ 108        IV. The Court Ordered Each Party to Pay Half of the Child Representative's

Fees and Did Not Order Payment From the Retirement Account

¶ 109    Janet argues that the court erred in ordering Janet to pay half of the child representative's fees[2] in the dissolution judgment because it is a *de facto* order that she pay it from a retirement account where her half of Feng's Trader Joe's 401(k) was the only asset of value she was awarded in the judgment. Janet argues for the application of *Radzik* to the facts of this case. In *Radzik*, the circuit court expressly ordered the liquidation of an individual retirement account (IRA) for payment of interim attorney fees, and on appeal the court held that the husband's IRA could not be ordered liquidated to satisfy an interim attorney fee award. *Radzik*, 2011 IL App (2d) 100374, ¶ 55. Janet argues that, similar to *Radzik*, this court should hold that retirement accounts cannot be considered when assessing a party's financial ability to pay fees to a child representative.

---

[2]   We note, as Janet points out, that the order was agreed only to the extent that neither party challenged the amount or reasonableness of the fees, but that the right to challenge the allocation of fees was reserved for appeal.

¶ 110    Janet further moved to cite the additional authority of *In re Marriage of Crook*, 211 Ill. 2d 437 (2004) for the same proposition. In *Crook*, the Illinois Supreme Court held that because of federal preemption Illinois courts are not permitted to consider federal social security benefits when distributing marital property in dissolution proceedings. We find *Crook* to be inapposite, as we are not dealing with federal social security benefits but, rather, with a 401(k) retirement plan sponsored by an employer.

¶ 111    First, we note the obvious difference that the retirement account at issue here is *Feng's* retirement account – not her own – as Janet was awarded half of Feng's retirement account. Second, regardless of whose retirement account funds are at issue, the court in this case did not in fact order the liquidation of the Trader Joe's 401(k) for the payment of the child representative's fees. Rather, as we discussed in section II above, the court ordered liquidation of Feng's 401(k) for payment of Andrew's counseling and for interim attorney fees in its October 12, 2011 order, and a subsequent qualified domestic relations order was entered to that effect on November 10, 2011. In the dissolution judgment, the court merely ordered that each party pay half of the child representative's fees and ordered that any remaining money held in escrow – *after* the withdrawal from the retirement account pursuant to the qualified domestic relations order – was to be applied toward the child representative's fees.

¶ 112    Moreover, Janet cites to no authority holding that orders for payment of fees can be considered "*de facto*" orders of payments from a retirement account where the assets in an individual retirement account are the only or significant remaining assets awarded to a party, nor can we find any. Rather, as we explain in the next subsection of our analysis, section 506 governing child representative fees allows for payment from "any *** source." See 750 ILCS

5/506(b) (West 2012). We affirm the provision in the dissolution judgment ordering each party to pay half of the child representative's fees.

¶ 113    V. The Court Did Not Order the Sale of the Florida Time Share to

Pay Child Representative's Fees; It Merely Ordered That the Proceeds of the Sale

Be Applied First to the Payment of the Child Representative's Fees.

¶ 114    Janet also argues that the court erred in the portion of the dissolution judgment ordering the sale of the Florida time share to pay the child representative's fees. While the award of a child representative's fees is normally reviewed for an abuse of discretion (*In re Marriage of Soraparu*, 147 Ill. App. 3d 857, 864 (1986)), to the extent an award of fees relies on statutory construction our review is *de novo*. *In re Marriage of Nash*, 2012 IL App (1st) 113724, ¶ 15 (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001)).

¶ 115    Janet's argument on this point is incorrect both factually and legally. First, according to Janet's recitation of the facts, the court ordered the sale of the time share for the specific purpose of paying the child representative fees. This is not the case. In the dissolution judgment, the court merely ordered that the parties' Florida time share be sold. The court then delineated the order of priority of application of the proceeds. The court ordered that the balance of the proceeds of the sale of the Florida time share in escrow were to be applied first to pay the child representative's fees and then were to be applied to the non-reimbursed medical expenses for the children. Thereafter, upon the final submission of the Child Representative's fee petition, each party would be equally responsible for payment of the child representative's fees. The court did not order the sale of the Florida time share for the purpose of paying the child representative's fees. Rather, it is apparent that the sale of the Florida time share was part of the court's division of property and the court merely ordered that the proceeds of the sale of the Florida time share apply first to

satisfy the child representative's fees. The proper division of marital property rests within the sound discretion of the trial court (*In re Marriage of Rapacz*, 135 Ill. App. 3d 1045, 1048 (1985)), not this court, and we cannot reverse a trial court's division of property absent an abuse of discretion. *In re Marriage of Koral*, 194 Ill. App. 3d 933, 943 (1989) (citing *In re Marriage of Ackerman*, 168 Ill. App. 3d 438 (1988)). Janet does not dispute the division of property generally.

¶ 116    Second, Janet's argument is not well grounded legally. Janet relies on *In re Marriage of Walsh*, 109 Ill. App. 3d 171, 176 (1982), for the proposition that section 508 of the Act does not permit a court to order the sale of marital assets to directly satisfy the payment of fees. But in *Walsh*, attorney fees were at issue, not child representative fees. Under section 508, which governs attorney fees generally (750 ILCS 5/508 (West 2012)), a court may not order payment of attorney fees directly from the marital estate. See *Walsh*, 109 Ill. App. 3d at 176. On the other hand, the plain language of section 506(b), which governs child representatives specifically (750 ILCS 5/506(b) (West 2012)), provides that the court may order payment from "any other party or source," including "the marital estate" or the child's separate estate, to pay the fees and costs of a child representative. *Id*.

¶ 117    Janet concedes that section 506(b) provides that the child representative's fees can be ordered from "any" source or from "the marital estate," but argues that section 506 also provides that sections 501 and 508 apply, and section 508 allows a court to order the payment of fees only directly to the attorney but does not allow a court to order an asset sold for the payment of fees.

¶ 118    But we note that section 506, governing child representatives, serves a different purpose from the general provision for parties' attorneys in section 508. The child representative is "a 'hybrid' of a child's attorney and a child's guardian *ad litem* who acts as an arm of the court in

assisting in a neutral determination of the child's best interests" and to aid the court "must be accorded absolute immunity so as to allow him to fulfill his obligations without worry of harassment and intimidation." *Vlastelica v. Brend*, 2011 IL App (1st) 102587, ¶ 23. Because the person represented is the child, not either of the divorcing parties, section 506 is substantively different in allowing payment from "any source" as follows:

> "Any order approving the fees shall require payment by either or both parents, by *any other party or source*, or from the marital estate or the child's separate estate. \*\*\* Unless otherwise ordered by the court at the time fees and costs are approved, *all fees and costs payable to an attorney, guardian ad litem, or child representative under this Section* are by implication deemed to be *in the nature of support of the child* and are within the exceptions to discharge in bankruptcy under 11 U.S.C.A. 523. The provisions of Sections 501 and 508 of this Act shall apply to fees and costs for attorneys appointed under this Section." (Emphases added.) 750 ILCS 5/506(b) (West 2012).

¶ 119 We cannot ignore the legislature's specific language in section 506 allowing the payment of child representative fees from "any" source by using the more general provision of section 508 governing parties' attorneys to override section 506. Instead, the more specific provision of section 506 prevails. All provisions of a statute should be viewed as a whole. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. Words and phrases of a statute should be interpreted in light of other relevant provisions of the statute and should not be construed in isolation. *Id.* (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 60 (2006)). "A court presumes that the legislature intended that two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002) (citing *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 391-92 (1998)). When two

statutory provisions relate to the same subject, the more specific provision prevails. See *id.* at 459 (citing *People v. Villarreal*, 152 Ill. 2d 368, 379 (1992) and *People ex rel. Kempiners v. Draper*, 113 Ill. 2d 318, 321 (1986)).

¶ 120       Thus, the more specific provision in section 506 governing child representative fees thus prevails over the more general attorney fee provision of section 508. Whereas generally attorney fees *cannot* be ordered paid from marital assets under section 508, section 506(b) specifically provides that child representative fees *can* be paid from "from the marital estate." 750 ILCS 5/506(b) (West 2012). The court in this case did not err in ordering that the proceeds of the sale of the Florida time share apply first to satisfy the child representative's fees.

¶ 121               VI. Permanent and Exclusive Possession of Former Marital Home

¶ 122       We reject Janet's last request that we reverse the court's award of permanent and exclusive possession of the former marital home to Feng pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994).

¶ 123       While Janet argues that the trial court lost jurisdiction after her first appeal, we note that the child representative's fee petition was still pending and Feng had filed a motion to reconsider the judgment of dissolution within 30 days of the judgment (see Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008) (providing that when a timely postjudgment motion has been filed, a notice of appeal becomes effective only upon resolution of the motion)). The parties also continued to litigate in the trial court after Janet appealed. We further note that Janet filed an emergency petition for termination of joint custody and award of sole custody of Andrew but did not also seek a reversal of the award of the marital home from the trial court within 30 days.

¶ 124       Janet concedes that a distribution of property is generally unable to be reopened. See 750 ILCS 5/510(b) (West 2010). But, "hat in hand," because of the stringent requirements of a

section 2-1401 petition (735 ILCS 5/2-1401 (West 2010)), Janet requests us to exercise our supervisory power pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994).

¶ 125     Feng responds that the award of the marital home is moot as he has abandoned the marital home and the marital home is in foreclosure. Janet claims in her reply brief that Feng's argument regarding mootness due to foreclosure "ha[s] no place in this appellate brief" and that we should simply disregard the issue of foreclosure. The issue regarding the award of the marital residence may indeed be moot, as Feng contends. A cause of action is deemed moot if no actual controversy exists or if events occur that make it impossible for the court to grant effectual relief. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 12. It is well established that this court does not consider moot questions or "consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Our supreme court has "consistently held that '[a]n appeal is moot when it involves no actual controversy or the reviewing court cannot grant the complaining party effectual relief.' " *In re Marriage of Donald B.*, 2014 IL 115463, ¶ 23 (quoting *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 522-23 (2001)). If the marital home property has been foreclosed we cannot grant Janet the relief she is requesting and her appeal is indeed moot. See *Schwind v. Mattson*, 17 Ill. App. 3d 182 (1974) (finding the appeal moot where a bank foreclosed on property and then bought and sold it to a third party, and the appellants failed to perfect a stay of the judgment).

¶ 126     It is unclear whether the marital home is indeed in foreclosure, as Feng asserts, or perhaps has been foreclosed in the interim. Feng offers no citation to the record, nor does Janet. Janet argues that we should disregard Feng's argument because he fails to cite to the record, citing Illinois Supreme Court Rule 341 (eff. July 1, 2008). Meanwhile Janet also herself fails to cite to the record. Even were we inclined to exercise our discretionary power under Supreme

Court Rule 366, we cannot make a determination on this issue as we do not have the relevant facts. See Ill. S. Ct. R. 341(h)(6), (h)(7) (eff. July 1, 2008). Also, it is the appellant's burden to provide this court with a sufficiently complete record to support her claim, and any doubts due to the incompleteness of the record will be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Janet provides no facts concerning the status of the marital home. We decline to exercise our supervisory power to reverse the award of the marital home to Feng.

¶ 127      Since we are remanding, Janet has the opportunity to file a section 2-1401 petition (735 ILCS 5/2-1401 (West 2010)) with a supporting affidavit and any other showing regarding new facts, if there are any, for determination by the circuit court. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 128                          VII. Feng's Petition to Modify Maintenance

¶ 129      Feng's only argument on appeal is that the court erred in denying his petition to modify maintenance, in that the court did not consider all the statutory factors and instead focused on his decision to leave his employment, with the effect that Andrew lost health insurance coverage, as an improper factor. As part of this argument, Feng also maintains that the court's decision to disregard Dr. Bryan's testimony was against the manifest weight of the evidence.[3]

¶ 130                  A. The Court Considered the Appropriate Statutory Factors

                            And Did Not Abuse Its Discretion

¶ 131      Feng argues that the trial court abused its discretion in its ruling in its order of May 20, 2014 denying his petition to modify maintenance because it did not consider the relevant factors

---

[3] We note that Janet argues in her reply brief in her appeals in reply to Feng's cross-appeal that we should not address the court's ruling on the motion to modify maintenance because Feng does not include a copy of the motion in the certified record on appeal. But Feng filed two appeals after Janet's appeals, and a copy of Feng's motion to modify maintenance is in the record in his appeals. On December 8, 2014, we granted Feng's counsel leave to prepare the record in Feng's appeals.

as set forth in section 510(a-5) and instead considered Feng's decision to change careers as an improper and irrelevant factor. Feng argues that "[t]he court in its May 20, 2014 ruling went to great length to express its displeasure about Feng's loss of medical insurance for his son, A.S. *** when Feng resigned his position at Trader Joes'" and that the court in its "lengthy" ruling "made comment about Feng's lack of financial contribution" to Andrew. Feng asserts that "he acknowledges his son's emotional condition is tragic," but that bringing the issue of support of Andrew into the ruling regarding his petition for the modification of maintenance was "arbitrary and unreasonable." Feng argues that combining the issue of child support with the issue of maintenance constitutes an abuse of discretion. Feng further argues that "there should have been a specific finding by the trial court as to Janet's attempt to find work when rendering its decision."

¶ 132       Maintenance may be modified or terminated by a court pursuant to section 510(a-5) of the Act only upon a showing of a "substantial change in circumstances." 750 ILCS 5/510(a-5) (West 2010). A "substantial change in circumstances" as required under section 510(a-5) means that either the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance has changed. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198 (2011). The party seeking modification bears the burden of establishing a substantial change of circumstances. *Id*.

¶ 133       Section 510(a-5) of the Act sets forth these specific factors to consider in determining a motion to modify maintenance:

          "(1) any change in the employment status of either party and whether the

          change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be  paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable." 750 ILCS   5/510(a-5) (West 2012).

¶ 134          In addition, in determining whether and to what degree a maintenance award shall be modified, the court should also consider the same factors assessed in determining the initial award found in section 504(a) of the Act. *Blum v. Koster*, 235 Ill. 2d 21, 30-31 (2009); 750 ILCS 5/504(a) (West 2012). These factors are as follows:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." *Id.*

¶ 135    A trial court's ruling on a petition for modification of maintenance will not be reversed absent an abuse of discretion. *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 26. "Under the abuse of discretion standard, the question is not whether this court might have decided the issue differently, but whether any reasonable person could have taken the position adopted by the trial court." *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 708 (2006). "[W]hen the basis

-42-

for an award of maintenance is established in the record, it is not mandatory that the trial court make explicit findings for each of the statutory factors." *Blum*, 235 Ill. 2d at 38. See also *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 28 (citing *In re Marriage of Reynard*, 378 Ill. App. 3d 997 (2008)).

¶ 136    In his reply brief, Feng concedes that under *Blum* maintenance orders will not be reversed solely because specific findings are not made. Thus, we reject Feng's argument that the court did not consider all the statutory factors solely because it did not make specific findings in its order.

¶ 137    We also reject at the outset Feng's argument that that "there should have been a specific finding by the trial court as to Janet's attempt to find work when rendering its decision." A motion to modify maintenance must be based on a substantial change in circumstances, and there was no change in Janet's employment status.

¶ 138    Feng argues that the trial court focused inordinately on his decision to resign his employment at Trader Joe's. We note that the very first factor in proceedings to modify maintenance that the court must consider is "any change in the employment status of either party and whether the change has been made in good faith." 750 ILCS 5/510(a-5) (West 2012). When determining motions to modify maintenance payments, a court should consider whether a party's situation is necessary or incurred by choice. See *Reynard*, 378 Ill. App. 3d at 1007. See, *e.g.*, *In re Marriage of Smith*, 77 Ill. App. 3d 858 (1979) (held because the change in circumstances was brought about by husband's own actions, it could not be the basis of a modification of maintenance). The trial court's consideration of this factor is required by statute and thus is not error.

¶ 139    Feng further argues that combining the issue of child support with the issue of maintenance constitutes an abuse of discretion. Janet argues in response that the court heard her

petition for indirect civil contempt concerning payment of child support and Feng's petition to modify maintenance at the same time, by agreement. The court thus was considering both issues at the same time with the agreement of the parties and ruled on both petitions on May 20, 2014. Feng's argument on this point is therefore disingenuous.

¶ 140    Janet also argues that Feng's failure to cite authority for his proposition that the court commits reversible error by merely discussing an issue related to a minor child when deciding maintenance issues dictates forfeiture of this argument. We agree with Janet. A contention that is supported by some argument, but by no authority whatsoever, does not satisfy the requirements of Supreme Court Rule 341(e)(7). *In re Marriage of Wade*, 158 Ill. App. 3d 255, 270 (1987) (citing *In re Marriage of Anderson*, 130 Ill. App. 3d 684 (1985), citing *Fuller v. Justice*, 117 Ill. App. 3d 933 (1983)). "A reviewing court *** is not simply a depository into which the appealing party may dump the burden of argument and research." (Internal quotation marks omitted.) *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 720 (2010); see also *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010). We agree with Janet that Feng forfeited his contention that discussing the issue of child support in the context of a motion to modify maintenance is an abuse of discretion.

¶ 141    In any event, we find no abuse of discretion because the statute allows consideration of "any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/510(a-5)(9) (West 2012). The court was well within its discretion to consider the impact Feng's bad-faith change in his employment status had on the minor child's health care costs and to consider Feng's pattern of not paying support as part of the facts supporting its determination of bad faith. The trial court concluded that Feng's decision to voluntarily resign Trader Joe's was made in bad faith, and the fact that he was willing to take this measure to reduce his maintenance obligation,

notwithstanding the loss of his own son's medical insurance, was further evidence of Feng's bad faith. The failure to pay support for Andrew was additional evidence of Feng's bad-faith pattern. The trial court thus did not err in its consideration of statutory factors for modification of maintenance.

¶ 142                    B. The Court's Finding Regarding Dr. Bryan's Testimony

                    Was Not Against the Manifest Weight of the Evidence

¶ 143       Finally, Feng argues that the trial court's decision to not give any weight to the testimony of Dr. Bryan in his motion to modify maintenance was an abuse if its discretion and was against the manifest weight of the evidence.

¶ 144       Janet responds that the court appropriately refused to credit Dr. Bryan's testimony because Dr. Bryan conceded on cross-examination that Feng did not see him between January 23, 2014 and the date of his evidence deposition and did not have any future appointments scheduled. Dr. Bryan also testified that he, in part, relies on subjective reporting of symptoms.

¶ 145       The relevant issue was whether Feng's alleged change in circumstances – his change in his employment status – was in good faith. When determining maintenance payments, a court should consider whether a party's situation is necessary or incurred by choice. See *Reynard*, 378 Ill. App. 3d at 1007. The word "ability" in "ability to pay" indicates that we should consider the level at which the maintenance-paying spouse is able to contribute, not merely the level at which he is willing to work. *In re Marriage of Smith*, 77 Ill. App. 3d at 862.

¶ 146       The trial court's decision to not give much weight to Dr. Bryan's testimony was not against the manifest weight of the evidence, as Dr. Bryan's testimony indicated that there was a three-year gap in treatment, and an X-ray taken at the relatively late date of November 5, 2013, when Feng was allegedly suffering worse symptoms, did not show any injury or condition.

Further, Feng did not submit to an MRI even though Dr. Bryan recommended one. All of Feng's symptoms were entirely subjective, and Dr. Bryan conceded that he relied on the reporting of symptoms to reach his determination that Feng had a condition of the lower back. There was no other objective evidence that Feng indeed had such a condition, much less that the condition was debilitating enough to disable him from his previous position at Trader Joe's.

¶ 147    The trial court's decision to discredit Dr. Bryan's testimony was not against the manifest weight of the evidence. We affirm the trial court's order denying Feng's motion to modify maintenance.

¶ 148                                CONCLUSION

¶ 149    Pursuant to our consideration of the issues above, we hold there was an abuse of discretion in the maintenance provision where there was no evidence in the record of the dissolution proceeding supporting the court's decision to award a limited duration of maintenance to Janet only up to the retirement age of 66, and the evidence instead established that Janet would not be able to support herself. We reverse the maintenance order in the dissolution judgment and order that the circuit court amend the provision in the dissolution judgment awarding maintenance to Janet to award her permanent maintenance, with the termination factors under section 510(c) of the Act (750 ILCS 5/510(c) (West 2012)), and including the court's provision for review of the maintenance award if Janet attains an income of at least $45,000.

¶ 150    We affirm the following January 29, 2013 judgment of dissolution provisions:   (1) denying Janet's request for contribution to attorneys fees; (2) requiring Janet to pay half of the child representative's fees; (3) ordering the sale of the Florida time share to; and (4) granting ownership and exclusive possession of the former marital residence to Feng.

¶ 151     We also affirm the court's May 20, 2014 order denying Feng's motion to modify maintenance.

¶ 152     We reverse only the trial court's order of October 12, 2011, which ordered that Feng's 401(k) be liquidated to (in part) pay interim attorney fees. Because Janet did not specify the form of relief for this error, however, we remand to the circuit court where she may request appropriate relief. Also, Janet's appeal of the provision of the dissolution judgment awarding the marital home to Feng may be moot if the home has been foreclosed. Janet fails to cite to the record or provide us with any facts regarding the outstanding question of whether the marital home has been foreclosed. Because we are remanding, Janet may address this in the circuit court on remand with a section 2-1401 petition.

¶ 153     Affirmed in part and reversed in part; cause remanded, with instructions.