NOTICE

Decision filed 03/19/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200111-U

NO. 5-20-0111

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| DEBRA R. EISENHAUER, | ) | Perry County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 17-D-16 |
| | ) | |
| GLENN A. EISENHAUER, | ) | Honorable |
| | ) | James W. Campanella, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion when it denied husband's petition to modify maintenance set forth in marital settlement agreement that was incorporated into judgment three months earlier because husband did not present sufficient evidence of the financial circumstances of the parties at the time the judgment was entered nor sufficient evidence that there had been a substantial change in circumstances since the entry of the judgment.

¶ 2    The respondent, Glenn A. Eisenhauer, appeals the November 14, 2019, order of the circuit court of Perry County, which denied his petition to modify his maintenance obligation to the petitioner, Debra R. Eisenhauer. For the following reasons, we affirm.

1

¶ 3                                    BACKGROUND

¶ 4      On April 7, 2017, Debra filed a petition for a dissolution of her marriage to Glenn in the circuit court of Perry County. At the time of the petition, Debra was 58 years old and Glenn was 56 years old. They were married on October 13, 1984, had lived together until March 2017, and had two emancipated children. Debra filed a financial affidavit on May 8, 2017, showing that at that time, her gross monthly income working at Pinckneyville Community Hospital was "12034." This court finds no financial affidavit for Glenn in the record.

¶ 5      On December 28, 2018, the circuit court entered a judgment of dissolution of the parties' marriage that incorporated their marital settlement agreement (MSA). Pursuant to the MSA, the parties had previously sold their interest in the marital business and marital residence and divided the proceeds equally. Article III of the MSA provides that Debra shall be awarded maintenance to be paid by Glenn for a period of 20 years. The MSA does not provide that the maintenance is nonmodifiable in amount or duration. The parties acknowledged in the MSA that, based on the statutory guidelines and the parties' then-current respective incomes, Glenn's maintenance obligation shall be $615 per month. Article III further provides that "the parties acknowledge that said maintenance is intended to be taxable income to [Debra] and tax deductible for [Glenn]."

¶ 6      On March 8, 2019, Glenn filed a petition to modify his maintenance obligation on the basis that there had been a substantial change in circumstances since the judgment had been entered. Glenn's petition alleged that he had surgery on his hands and elbows on January 23, 2019, and February 27, 2019, respectively, and he anticipated that he would need follow-up treatment "regarding these health issues." He further alleged that, because of his health issues, he had been unable to return to work, and had no other source of income.

¶ 7    On October 31, 2019, the circuit court held an evidentiary hearing on Glenn's petition to modify maintenance. Glenn testified that, at the time the dissolution judgment was entered, he was employed as a driver for Beelman Trucking. He testified that he left Beelman Trucking due to "medical issues." When asked when he developed these medical issues, he testified that he had "been developing them for years." Upon further questioning, Glenn testified that he had several operations on his hands and elbows but was able to return to work following those surgeries. However, he did not testify as to a date that he returned to work. He testified that, in June of 2019, he developed an allergic reaction to a new medication for his diabetes, which meant that he could only use insulin injections, but taking such injections disqualified him from being able to drive a truck.

¶ 8    Glenn testified that he left Beelman Trucking in June of 2019 because his Department of Transportation (DOT) physical was coming up and it was his understanding that if he failed it due to his blood sugar issues, he would be permanently disqualified from driving a truck. At the time of the hearing, he was instead employed at C&K Industrial Services where he could drive a truck with a waiver from the DOT physical because the truck remained on private property. His most recent pay stub from his employment at C&K Industrial Services was admitted into evidence, showing gross income of $2860 per month, at an hourly wage of $18.25 and working approximately 42 hours a week, including 15.5 hours of overtime. The pay period for this exhibit was September 23, 2019, until October 6, 2019. The "year to date" information on this exhibit shows a total gross pay of $3914.67. Glenn did not testify as to when he started working at C&K Industrial Services but said he had been working there "not quite two months." He testified that he looked "all over" for employment between the time he left Beelman Trucking and the time he started at C&K Industrial Services.

¶ 9    Glenn testified that he did not know whether he would have opportunity to work overtime at C&K Industrial Services in the future. He testified that his financial circumstances had changed since the time the parties entered into the MSA because he makes less income at his new job and had to use "a lot" of the funds he received as his part of the proceeds of the sale of the marital residence and business to pay off major medical bills. He also used funds to purchase a camper for $23,000 which he uses as his living quarters. Regarding health insurance, Glenn testified that he would pay higher premiums with C&K Industrial Services but would have a much lower deductible than he did with Beelman Trucking. He testified his new premium was $550 to $600 a month but there is no indication from the record what his premiums were with Beelman Trucking.

¶ 10    On cross-examination, Glenn testified he knew he was going to have surgery at the time he entered into the MSA and knew that he had diabetes at that time. He further testified that he did not take any medications to control his blood sugar but that he would have to if he could not begin to control his blood sugar and/or lose weight to avoid going on the injections. On redirect examination, he testified that when he worked for Beelman Trucking, his average hourly wage was $13.62 per hour and he often worked 70 hours per week. Other than this testimony, Glenn introduced no evidence of his earnings or expenses at the time the dissolution judgment was entered or of his expenses at the time of his petition for modification. While his testimony references a financial affidavit he "filled out at the time of the divorce," this court finds no such financial affidavit in the record. Following Glenn's testimony, Debra testified as to differences in her finances from the time she filed her financial affidavit, which this court does find in the record. These included a $4000 expense to abate mold in her new home and a car payment for the purchase of a vehicle to replace the one she was awarded in the MSA.

4

¶ 11    After the parties presented evidence and argument, the circuit court denied the motion to modify from the bench, stating that Glenn had not shown a material change in circumstances since the entry of the judgment. The circuit court stated it was basing its ruling in large part on the short period of time in which the MSA was in effect before Glenn sought modification. The circuit court found that Glenn still would have $2000 a month to live off after paying the maintenance obligation. On November 14, 2019, the circuit court entered an order denying the petition to modify "for the reasons stated on the record." Glenn filed a motion to reconsider, which the circuit court denied on March 30, 2020. Glenn filed a timely notice of appeal.

¶ 12                                    ANALYSIS

¶ 13    Pursuant to section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/502(f) (West 2018)), if the parties to an MSA "do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances." This is the standard that is set forth in section 510(a-5) of the Act. 750 ILCS 5/510(a-5) (West 2018). A "substantial change of circumstances" as required under section 510(a-5) means that either the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance has changed. *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶ 132. It is well settled that the party seeking modification of maintenance has the burden of establishing that a substantial change in circumstances has occurred. *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 14. In determining whether to modify a maintenance award, a court considers the nine factors set forth in section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2018)), which are:

>        "(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage *** and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a *** modification *** is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage ***; and

(9) any other factor that the court expressly finds to be just and equitable."

¶ 14    Section 510(a-5) (750 ILCS 5/510(a-5) (West 2018)) further instructs that the court shall consider the applicable factors in section 504(a) of the Act (750 ILCS 5/504(a) (West 2018)). The section 504(a) factors are:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

(6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2018).

¶ 15 The circuit court has "wide latitude in determining whether a 'substantial change' has occurred." *In re Marriage of Saracco*, 2014 IL App (3d) 130741, ¶ 13. The circuit court's decision to grant or deny a motion to modify a party's maintenance obligation will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 973 (1997). "[I]f the court's exercise of discretion has an evidentiary basis, then the reviewing court will consider the manifest weight of the evidence." *In re Marriage of Bates*, 212 Ill. 2d 489, 524 (2004). A judgment is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *In re Marriage of Matchen*, 372 Ill. App. 3d 937, 946 (2007).

¶ 16 Here, we cannot say that the circuit court abused its discretion in denying Glenn's petition to modify the maintenance set forth in the MSA. Glenn argues on appeal that modification of maintenance is required because his gross income had been reduced from $4131.40 per month to $2860 per month. At the time of the hearing, Glenn had worked in his new position at C&K Industrial Services for less than two months. In his new position, Glenn makes a substantially higher hourly wage than he did in his prior position. While Glenn argues that he was afforded a great deal more overtime at his prior position with Beelman Trucking, he testified that he was not sure whether he would have the opportunity to work more overtime in his new position. Due to the short time in which Glenn worked in his new position, a reasonable trial judge could conclude that a finding that Glenn's circumstances had changed substantially was premature. In addition, other than his testimony that he earned $13.62 per hour in his prior position, and "often worked 70 hours per week," there is no evidence in the record of Glenn's financial position at the time he entered into the MSA, as there is no financial affidavit for Glenn in the record and no copies of any paystubs from Beelman Trucking. Should Glenn's change in employment culminate in the

8

difference in his annual income that he argues it will, he may be entitled to a modification. However, on the record before us, we cannot say the circuit court abused its discretion.

¶ 17                                    CONCLUSION

¶ 18    For the foregoing reasons, we affirm the November 14, 2019, order of the circuit court of Perry County, which denied Glenn's petition to modify his maintenance obligation to Debra.


¶ 19    Affirmed.