2020 IL App (1st) 190234

FIFTH DIVISION
SEPTEMBER 18, 2020

No. 1-19-0234

| | | |
|---|---|---|
| *In re* MARRIAGE of | ) | Appeal from the |
| | ) | Circuit Court of |
| DANA DEA, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 2008 D 8694 |
| and | ) | |
| | ) | |
| PAUL DEA, | ) | Honorable |
| | ) | Jeanne Cleveland Bernstein, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Mikva and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1 The respondent-appellant, Paul Dea (Paul), appeals from the circuit court of Cook County's denial of his motion to modify maintenance regarding the maintenance amount he receives from petitioner-appellee, Dana Dea (Dana). For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                                    BACKGROUND

¶ 3 The parties were married in 1989 and divorced on April 3, 2012. In the judgment for dissolution, the trial court awarded maintenance to Paul in the amount of $1600 per month (the 2012 dissolution judgment). The trial court determined that Dana's monthly living expenses were $4853.09 and Paul's monthly living expenses were $3800. Paul is disabled due to multiple sclerosis (MS) and receives social security benefits. Prior to his MS diagnosis in 2005, Paul worked

as a truck driver. For most of the marriage, Dana took care of the parties' children and worked as a waitress. In 2001, however, she began a career in information technology (IT). She was working in IT at a law firm and earning a salary of $83,642 when the parties divorced. In the 2012 dissolution judgment, the trial court noted that Dana's financial status had improved through her recent career change and that her income was steadily growing, while Paul's income had declined due to his disability. The 2012 dissolution judgment stated: "Paul Dea has no present or future ability to earn income and he cannot be rehabilitated so as to support himself through appropriate employment."

¶ 4     Dana appealed the 2012 dissolution judgment. On appeal, this court remanded the case back to the trial court regarding the maintenance amount. *In re Marriage of Dea*, 2013 IL App (1st) 122213. We held that the trial court had failed to consider Paul's income from his social security benefits when it determined the maintenance award. *Id.* ¶ 22. We found that Paul only needed an additional $395 per month to pay for his expenses. *Id.* ¶ 29. Our opinion also noted that Dana would not be able to pay for her own expenses if she was required to pay a maintenance amount of $1600 per month. *Id.* ¶ 30.

¶ 5     On remand, the trial court modified the 2012 dissolution judgment and adjusted Paul's maintenance award to $395 per month.

¶ 6     On February 14, 2017, Paul filed a motion to modify maintenance, which is the subject of the instant appeal. His motion alleged that there had been a substantial change in circumstances, necessitating an increase in his maintenance award. Specifically, Paul alleged, *inter alia*, that his Social Security benefits had been reduced by $200 per month, that his MS had "worsened," making "any type of employment nearly impossible," and that Dana had a "substantial income" that could support him.

¶ 7    A hearing on Paul's motion to modify maintenance commenced. Paul testified that his mortgage payment is $737 per month and his health insurance deductible is $184 per month. Paul testified that his social security benefits are $2272 per month. Paul's counsel later clarified to the trial court that Paul's social security benefits have increased approximately 5% over the last five years. Paul also testified that, in the 2012 dissolution judgment, he was awarded $216,000 from his retirement account, but it was down to $33,000 at the time of his motion to modify. Paul further testified that he does not have any credit card debt and is able to pay his monthly expenses. He explained that he puts the monthly maintenance payments that he receives from Dana into a savings account "in case [he] need[s] things done to the house or something [he] may need."

¶ 8    Paul testified that he worked as a security guard at a wind farm for a short time after the 2012 dissolution judgment, where he made $10 per hour, but he no longer worked because of his health issues. During his testimony, the following exchange ensued:

"[PAUL'S COUNSEL]: Now, could you—are you suffering from any physical conditions at this time, sir?

[PAUL]: Well, I have multiple sclerosis.

***

[PAUL'S COUNSEL]: Now, sir, have—what do you—how long have you experienced—strike that. How long have you suffered from multiple sclerosis?

[DANA'S COUNSEL]: You know, Judge, I'm going to object again for relevance.

THE COURT: I don't know what the relevance is. [Counsel]?

[PAUL'S COUNSEL]: He's had multiple sclerosis—

THE COURT: He had it before.

[PAUL'S COUNSEL]: And he still has it. Judge.

THE COURT: Okay. And he was on Social Security disability then. He's still on Social Security.

[PAUL'S COUNSEL]: That's correct.

THE COURT: So, if you're looking for something different, he's not going to get more money from Social Security or anybody else, because his condition is what it was. So where are we going with this?

[PAUL'S COUNSEL]: Well, because his condition worsened and he can't—he was able to earn money under Social Security. And it shortly—well, two or three years after the judgment was entered he got a job driving security for wind farms in construction. At that time, he was able to work—

[DANA'S COUNSEL]: I'm going to object.

THE COURT: This is an offer—I'm going to treat this as an offer of proof. So you can go ahead.

[PAUL'S COUNSEL]: And he worked on a wind farm that required him—he could drive and check all day. He worked there and he earned money. Since that time, his physical condition has deteriorated. He's not able to walk without the use of the walker. He has a hard time making it the length of his house.

[DANA'S COUNSEL]: Judge, again, objection. Relevance.

THE COURT: It's an offer of proof. You can object at the end of the offer of proof and I'll determine or not whether to go ahead with it.

[DANA'S COUNSEL]: Okay.

[PAUL'S COUNSEL]: He's also fallen twice but hospitalized for serious urinary infections and has lost his mobility to a point where he can't walk. He can't even earn side money. But as—in addition to that, our testimony will show that when you're disabled, you have to spend more money. And he has to go into a— he's going to testify that he has to go into an assisted living [facility] which runs in his area between $4,500 and [$]8,000 a year. He is only able to maintain his house because his neighbor is a real nice guy. And that is the change of circumstances.

THE COURT: Okay. Is that the end of your offer of proof?

[PAUL'S COUNSEL]: On that portion, yes.

THE COURT: Okay.

[DANA'S COUNSEL]: Objection. Relevance, Judge. In the initial ruling, Judgment for Dissolution of Marriage, it was found that [Paul] did not work, wasn't employed at all. So, in fact, he's— the fact that he was working at all since that happened is a change in the opposite direction. The award was based on his inability to work and on his being disabled and having multiple sclerosis. Judge.

And there's no—and I'm objecting to counsel testifying as to what—

THE COURT: He's not testifying. He made an offer of proof.

\*\*\*

THE COURT: I don't think that I have heard anything in your offer of proof that would sway me to think there was [a] change in circumstances. It sounds like the same things that were going on in 2012.

\*\*\*

THE COURT: But the basis of all of this was he wasn't able to work. He's now not able to work. One would anticipate that multiple sclerosis is a downward spiral. That may have been taken into consideration. But nothing in your offer of proof would be persuasive in allowing for a modification of maintenance at this point."

¶ 9     Dana testified that she earned $93,316 in 2016 and $105,000 in 2017. She further testified that she had accumulated $165,000 in assets since the 2012 dissolution judgment.

¶ 10     Following the hearing, Paul filed a memorandum in support of his motion to modify maintenance. His memorandum argued that his income and retirement account had both decreased since the 2012 dissolution judgment while Dana's income and assets had increased. He claimed that, coupled with his deteriorating health, the changes in both parties' incomes established a substantial change in circumstances warranting a maintenance modification.

¶ 11    Dana filed a memorandum in opposition to Paul's motion. Her memorandum argued: that the evidence showed that Paul's expenses had *decreased* since the 2012 dissolution judgment; that Paul's social security benefits had *increased* by approximately 5% in the last five years; and that Paul had other sources of income that he had not disclosed. She also highlighted Paul's testimony that he is able to pay for all his expenses on his own and puts his maintenance payments from Dana into a savings account. Dana conceded that her income has increased by approximately 20% since the 2012 dissolution judgment, but argued that, standing alone, that was insufficient to constitute a substantial change in circumstances justifying a maintenance modification.

¶ 12    On January 8, 2019, the trial court entered an order denying Paul's motion to modify maintenance. The trial court found that Paul had failed to meet his burden and prove that there was a substantial change in circumstances. The order stated: "[Paul] does not use the maintenance payments for his day-to-day expenses and *** he puts his maintenance payments into a savings account to save for his future." The order further explained that Paul does some side work for his neighbors in exchange for food and supplies, which he did not disclose in his financial statements. Additionally, the order noted that Paul "continues to be a heavy smoker, smoking two packs a day, at the cost of upwards of $100 per 2 cartons of cigarettes." Paul subsequently appealed the trial court's order.

¶ 13                                    ANALYSIS

¶ 14    We note that we have jurisdiction to consider this matter, as Paul filed a timely notice of appeal following the denial of his motion to modify maintenance. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 15    Paul presents the following issues on appeal: (1) whether the trial court erred in denying his motion to modify maintenance; and (2) whether the trial court erred in preventing him from testifying about his health problems.

¶ 16    As an initial matter, we address Dana's argument that Paul has failed to provide this court with a sufficient record. Specifically, she claims that only one of the 30 exhibits that Paul introduced at trial are included in the record on appeal. In response, Paul points out that evidence of the parties' incomes is included in the record, which is sufficient for this court to review this matter. Indeed, the parties' testimony regarding the specifics of their financial situations are included in the record on appeal, while the associated exhibits, such as the parties' tax returns, are not. Our supreme court has long held that in order to support a claim of error on appeal, the appellant has the burden of presenting a sufficiently complete record. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "Any doubts arising from an incomplete record must be resolved against the appellant." *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 278 (2006). We are able to review this matter based on the record before us, but to the extent that our review is hindered by an incomplete record, any deficiencies resulting from an incomplete record will be resolved against Paul.

¶ 17    Paul first argues that the trial court erred in denying his motion. He claims that there was a substantial change in circumstances, warranting a maintenance modification. The thrust of his argument is that his income and retirement account have decreased since the 2012 dissolution judgment while Dana's income has increased. Paul avers that these income changes, coupled with his deteriorating health, constitute a substantial change in circumstances. Paul additionally argues that the trial court erred by considering his smoking habit in its ruling.

¶ 18    An order for maintenance may be modified only upon a showing of a substantial change in

circumstances. 750 ILCS 5/510(a-5) (West 2016). Courts in Illinois have held that a " 'substantial change in circumstances' " means that either the needs of the party receiving maintenance or the ability of the other party to pay that maintenance has changed. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198 (2011). The party seeking modification of a maintenance order has the burden of showing that a substantial change in circumstances has occurred. *Id.* A trial court's decision to modify maintenance will not be disturbed absent a clear abuse of discretion. *Id.* at 199. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 19   Although Paul claims that his income has decreased since the 2012 dissolution judgment, the record reflects that his social security benefits have actually *increased* over the last five years. He also stresses that his retirement account has decreased, but since Paul is retired, it naturally follows that he has been withdrawing money from his retirement account. More importantly, aside from vaguely claiming that his medical bills are increasing, Paul does not specifically argue that he needs more maintenance. In fact, the record reflects that his living expenses have *decreased* since the 2012 dissolution judgment. Most significantly, he even testified that he puts his maintenance payments from Dana into a savings account because he is able to pay for all his expenses on his own. Thus, Paul cannot prove a substantial change in circumstances warranting additional maintenance under these facts and circumstances.

¶ 20   Further, Paul's worsening health and inability to work cannot constitute a substantial change in circumstances when: (1) he had MS and was not working at the time of the 2012 dissolution judgment; and (2) the progression of his MS and its impact on his employment was considered in the 2012 dissolution judgment. It is well known that MS is a progressive disease. The trial court clearly considered the effect of Paul's progressing MS on his future ability to work

and factored that into the maintenance award. Indeed, the 2012 dissolution judgment explicitly noted: "Paul Dea has no present or future ability to earn income and he cannot be rehabilitated so as to support himself through appropriate employment." See *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 30 (this court is reluctant to find a substantial change in circumstances where the trial court contemplated and expected the financial change at issue). It should also be noted that, although the 2012 dissolution judgment was based on the trial court's belief that Paul was no longer employable, Paul in fact went back to work for a period of time after that judgment was entered. Further, Paul continues to do work in exchange for food and supplies.

¶ 21    Paul makes much of the fact that Dana's income has increased since the 2012 dissolution judgment. However, an increase in the paying party's income is generally not sufficient, on its own, to warrant modification of a maintenance award. *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1005 (2008). This is especially true in this case, where the trial court considered Dana's steadily growing income in the 2012 dissolution judgment. See *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 24 ("We note that a party's increased income does not constitute a substantial change in circumstances when the increase was based on events that were contemplated and expected by the trial court when the judgment of dissolution was entered."). As it did when considering Paul's MS, the trial court recognized that Dana's earning potential was likely to increase. Therefore, the trial court factored that into its maintenance award, as well.

¶ 22    Paul additionally argues that the trial court erred in considering his smoking habit in its ruling. He claims that the trial court specifically noted his smoking in its order and penalized him for it. However, trial courts have a responsibility to consider all of the parties' expenses. It is clear that the trial court was merely determining Paul's living expenses, including the amount of money he spends on cigarettes. Since Paul is a smoker, the trial court was entitled to consider cigarettes

as a calculable, recurring, and discretionary expense. We note that, in all dissolution cases where there is a finite amount of money, each party has a responsibility to recognize that fact and act prudently in incurring discretionary expenses and spending. That aside, nothing in the record indicates that the trial court penalized Paul for smoking and that the court denied his motion on that basis. Instead, the trial court was clearly accounting for all of Paul's expenses, including the expense for his smoking habit. Thus, we reject Paul's argument.

¶ 23    Next, Paul argues that the trial court erred in preventing him from testifying regarding the specifics of his worsening health. Paul claims that if he had been able to detail his progressing MS and its associated costs, his testimony would have established a substantial change in circumstances justifying a maintenance modification.

¶ 24    The admission of evidence is within the sound discretion of the trial court. *People v. Abrego*, 371 Ill. App. 3d 987, 992 (2007). Its ruling will not be reversed absent an abuse of discretion. *Id.*

¶ 25    During the hearing on his motion to modify maintenance, Paul did not offer any evidence, such as expert witness testimony, showing that his MS had progressed in a way that was not anticipated in the 2012 dissolution judgment. The record is clear that, in the 2012 dissolution judgment, the trial court recognized that MS is a progressive disease and carefully considered that fact in its maintenance award. Paul's self-serving testimony about his MS at the time of his motion would have been irrelevant and inconsequential in determining if there had been a *substantial change* in circumstances. The trial court accordingly did not abuse its discretion in excluding that evidence.

¶ 26                                 CONCLUSION

¶ 27     For the foregoing reasons, we find that the trial court did not abuse its discretion in denying Paul's motion to modify maintenance. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 28     Affirmed.

---

**No. 1-19-0234**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Dea*, 2020 IL App (1st) 190234 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2008-D-8694; the Hon. Jeanne Cleveland Bernstein, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael T. Tristano and Marly R. Tristano, of Tristano & Tristano, Ltd., of Hickory Hills, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Matthew D. Elster, of Beermann LLP, of Chicago, for appellee. |

---