2022 IL App (1st) 201358-U

Nos. 1-20-1358, 1-21-0076, & 1-21-0137 (cons.)

Order filed March 17, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | Appeal from the Circuit Court |
| LYNNE E. BARTLETT | ) | of Cook County. |
| | ) | |
| Counter-Respondent-Appellee, | ) | |
| | ) | No. 06 D 8805 |
| v. | ) | |
| | ) | |
| DENNIS M. QUINN, | ) | Honorable |
| | ) | Mary S. Trew, |
| Counter-Petitioner-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court erred when it found that former husband's decrease in income due to his voluntary retirement did not constitute a substantial change in circumstances to warrant modification of maintenance. The trial court did not err in ordering ex-husband to pay ex-wife's attorney fees, in their entirety.

¶ 2     The trial court denied ex-husband's petition to modify or terminate maintenance, finding he failed to demonstrate a substantial change in circumstances as defined by Section 510 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act), 750 ILCS 5/510 (West 2020). The trial court continued the ex-husband's permanent maintenance obligation, based on its

calculation of ex-husband's retirement assets and ex-wife's inability to work. Further, the court ordered the ex-husband, Dennis M. Quinn, to remunerate in excess of $73,000 in attorney fees for the benefit of his ex-wife, Lynne E. Bartlett. For the following reasons, we affirm in part, reverse in part, and remand.[1]

¶ 3                                   I. JURISDICTION

¶ 4        On November 30, 2020, the trial court denied Quinn's motion to reduce or terminate maintenance. He filed a timely notice of appeal on December 14, 2020. Thereafter, on December 31, 2020, the trial court entered an order in response to Quinn's motion to clarify. In this order, the court reiterated that it ordered Quinn to pay *all* of Bartlett's reasonable and necessary legal fees and specified that he accordingly owed her $73,271.09. He timely appealed this order on January 22, 2021. Subsequently, on February 8, 2021, the court entered a final order for "further ruling/clarification," in which it calculated Quinn's maintenance shortfall for 2020 and Bartlett's social security benefits received from 2018-2020. Quinn filed another notice of appeal on February 9, 2021. Quinn then moved to consolidate the three appeals, and this court granted the motion. Accordingly, this court has jurisdiction to consider these matters, pursuant to Illinois Supreme Court Rule. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 5                                   II. BACKGROUND

¶ 6        Counter-petitioner Dennis M. Quinn, currently age 71, and counter-respondent Lynne E. Bartlett, currently age 69, were married on December 1, 1984, and had three children, all of whom are now grown and emancipated. On August 16, 2006, Bartlett filed a petition for dissolution of marriage, shortly after obtaining an emergency order of protection against Quinn. At that time, their youngest child was 16 years old. Quinn worked as an attorney throughout their marriage.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Bartlett, also an attorney, stopped working outside the home in 1988 after the birth of their second child and was disabled at the time she filed her petition for dissolution of marriage.

¶ 7 Following a five-day bench trial, a judgment of dissolution was entered on September 2, 2008. Bartlett was awarded sole care and custody of the minor child, and Quinn was awarded parenting time. The judgment for dissolution of marriage also awarded each party $894,788.12. The judgment provided that Quinn, who at the time earned $365,000 annually, would pay Bartlett $8000 per month in permanent maintenance. This maintenance was subject to termination only if one of the following occurred: (1) the death of either party, (2) the remarriage of Bartlett, or (3) the cohabitation of Bartlett with another person on a residential, continuing conjugal basis. Additionally, Quinn was ordered to pay Bartlett $3000 a month in child support[2], and to maintain medical, dental, and vision insurance for the children.

¶ 8 Following Bartlett's motion to reconsider, an amended judgment of dissolution of marriage was entered on January 20, 2009. In the amended judgment, the court addressed Bartlett's arguments regarding (1) classification of the Fidelity account ending in 138, and (2) the allocation of household expenses pertaining to the marital residence. Subsequently, the parties filed several pleadings including, *inter alia*, a petition for rule to show cause, and a motion to enforce judgment.

¶ 9 Bartlett then filed a motion to increase maintenance, alleging a substantial change in circumstances and contending that the court had failed to consider the expenses she incurs relating to her two emancipated children and her uncovered medical and dental expenses. In response, Quinn alleged that his salary had decreased by 25%, to $274,000, as of April 2, 2009. Bartlett subsequently withdrew her petition. On October 14, 2009, following a hearing, the circuit court

---

[2]The court noted that, although this amount was a deviation from the guideline child support amount of $4100, the divergence was appropriate given the financial resources of the custodial parent, the needs of the child, and the standard of living the child would have enjoyed had the marriage not dissolved.

reduced Bartlett's maintenance award to $6000 per month for the period between October 2009 and December 2010, and set her permanent maintenance award at $6500 per month thereafter. The court also ordered that—commencing October 8, 2009, until further order of court— Quinn shall remit 25% of any net bonus he receives as additional maintenance to Bartlett.

¶ 10      On August 16, 2019, Quinn filed a petition to modify or terminate maintenance, alleging a substantial change in circumstances in that he planned to retire in April 2020. Nearly a year later, Quinn filed an amended petition to modify or terminate maintenance, explaining that, due to the unpredictability of COVID-19, he had delayed his retirement until July 24, 2020. The court held a three-day hearing to consider Quinn's petition.

¶ 11      The parties stipulated that (1) the total of Bartlett's cash equivalents was $19,110.94; (2) her equities and stock totaled $25,898.32; and (3) the sum of Bartlett's retirement assets totaled $750,464.04. They further stipulated that (1) the total of Quinn's cash equivalents was $44,539; (2) his equities and stock totaled $102,329; (3) he received a total of $502,303.75 in inheritance from his deceased parents; and (4) the summary total of Quinn's retirement assets was $1,105,219.

¶ 12      Quinn is 71 years old, and was, at the time of the hearing, a licensed attorney. He testified he lives in a condominium and maintains a mortgage on his unit, with a balance due of $222,480. He estimated his net equity in his condominium to be $99,020. Prior to his retirement, Quinn worked as an attorney for 41 years. He worked at the law firm of Mayer Brown, LLP from 1979 to 1984, and again from 2005 until his retirement in July of 2020 at the age of 70. He testified his annual salary was reduced on May 18, 2020 to $238,000. Quinn explained he retired because he was (1) no longer accruing additional Social Security benefits, (2) continually stressed and tired, and (3) becoming less effective as a lawyer. Specifically, he testified his memory was not as good as it used to be, his concentration was not as good as it once was, he began making small mistakes

at work, and wanted to retire before he made any big mistakes. Detailing his nightly routine, Quinn explained that he often did not return home from work until after 8 or 9 p.m. at the earliest, at which time he would drink a beer or two and then have several large glasses of Jack Daniel's Tennessee Whiskey to ease his stress. Since retiring, he stopped drinking alcohol, is working out regularly, is eating on a regular basis, seeing a doctor, and generally taking care of himself. He testified he had previously told Bartlett that he was planning to retire within a couple of years and would have to terminate her maintenance because he would no longer have earned income. In the years since his divorce, Quinn testified he has paid a total of $972,445 in maintenance to Bartlett.

¶ 13        Quinn testified regarding his financial affidavits. The affidavits, dated June 30, 2019 and August 4, 2020, were admitted into evidence, and provided as follows. Quinn had an annual gross income in 2019 of $311,519. In 2019, his net monthly income was $13,035. His monthly expenses amounted to $10,040. He had a monthly surplus of $3031. As of August of 2020, his gross income for the year 2020 was $153,532. His gross monthly income dropped to $4430. Quinn receives a monthly Social Security income of $3239 (after Medicare deductions). He does not receive a pension. After all expenditures for the month, he currently has a deficit of $9218 a month. He has reduced his living expenses since retiring, and stated if maintenance were to be terminated, he would only be at a $2718 deficit, which he would pay from his savings, investments, and retirement funds. Starting at age of 72, he will be required to take mandatory distributions from his Individual Retirement Account (IRA) at a projected amount of $40,336 annually. On cross-examination, Quinn admitted that he assumed he would not have to pay maintenance any longer once he had no income. Additionally, he testified that he had gifted cash to his three children in the aggregate amount of $197,000 over the last five years.

¶ 14    After Quinn rested his case-in-chief, Bartlett's counsel requested a directed finding, pursuant to 735 ILCS 5/2-1110 (West 2020), arguing that Quinn failed to establish a *prima facie* case showing a substantial change of circumstances. Following brief arguments, the trial court granted the motion for a directed finding with respect to termination of maintenance but denied the motion with respect to modification of maintenance. As reflected in its later written order, the court granted the motion after considering the termination language in the permanent maintenance order, the voluntary nature of Quinn's retirement, and the length of their marriage (almost 24 years).

¶ 15    Bartlett testified she lives in a three-bedroom condominium with an estimated fair market value of $315,000. She maintains a mortgage on her unit, with a balance due of $76,099.59. Her two youngest children, aged 28 and 32, live with her and contribute $450 and $850 per month, respectively. Bartlett is a licensed attorney and has a master's degree. She worked as an attorney, and then as a headhunter, until 1988, when she stopped working outside the home so she could care for their children.[3] She returned to the workforce in 2011 as a bank teller for Chase bank, making $11.20 an hour. After approximately two years, she then began working as a legal specialist for Chase, a position which paid approximately $60,000 annually. Thereafter, she worked for ten months as an attorney for Chase, until 2016 when she could no longer work due to her disabilities.[4] Each year she worked at Chase, she contributed 50% of her salary to her retirement funds. Bartlett received monthly disability payments ($3100) from Chase from

---

[3]She testified she worked three times a year as an arbitration panelist for Cook County court's mandatory arbitration from approximately 1990 until 2005, when she had to stop because of various injuries she had incurred throughout the marriage.

[4]Bartlett testified that—as a result of several car accidents, an alleged domestic violence incident with Quinn, an injury that resulted from an MRI machine, a fall from a step ladder, a dog attack, and being on the Ehlers-Danlos spectrum—she suffers from severe orthopedic issues, chronic pain, nerve damage, loss of tendons in her foot, ringing in her ear, and she has a recurring need for dental repairs and physical therapy.

December of 2016 through November of 2019. She testified that she can no longer work, in any capacity, owing to her inability to concentrate because of her severe, ongoing pain. She has had 20 surgeries, including the implantation of a spinal cord stimulator to manage pain. Subsequent to the divorce, she received two settlements—one for $20,000 resulting from a rear-end collision that occurred during the marriage and one for $120,000 for medical malpractice. She also received a $5000 inheritance when her mother passed away.

¶ 16        Bartlett testified regarding her financial affidavits. The affidavits, dated September 8, 2019 and August 31, 2020, were admitted into evidence, and provided as follows. Bartlett had an annual gross income in 2019 of $101,963[5]. Her 2019 net monthly income was $12,416. Her monthly expenses amounted to $13,090. She had a monthly deficit of $674. Her 2020 gross monthly income was $11,775.83, which consisted of Quinn's maintenance payments ($6500), her monthly portion of Quinn's Social Security benefits ($1284, after deducting $144.60 for Medicare), her monthly tax-free disability payments[6] from Monarch Life Insurance ($2600), dividend income ($91.83), and her children's monthly contributions to the household ($1300). Bartlett's monthly expenses amounted to $14,045. She had a monthly deficit of $4193.20. In 2019, she owed a total of $35,101 on two Bank of America credit cards and a total of $25,610 on two Chase credit cards. However, Bartlett testified she had recently removed $65,000 from her retirement to pay off credit card debt,

_____

[5]From the documents Bartlett submitted, it appears as if the $101,963 adjusted gross income she listed on both her 2019 federal income tax return and her August 31, 2020 financial affidavit does not include the monthly amount she was receiving in disability payments ($2600 from Monarch Life Insurance and $3100 from Chase, through November). It appears Bartlett received, in 2019, an additional $31,200 from Monarch Life and $34,100 from Chase. This would bring her 2019 yearly income to approximately $167,263.

[6]Bartlett testified that these payments would only terminate in two instances: (1) her death or (2) if it was determined that she is no longer disabled for the profession (homemaker) she had at the time of the date of disability.

which included attorney fees and medical costs. At the age of 72, she will be required to take mandatory distributions from her IRA.[7]

¶ 17    At the conclusion of the evidence, the trial court determined that—while Quinn's age and decreased income weighed in favor of modifying maintenance—all other factors weighed against him. Specifically, the court noted that (1) Quinn is in relatively good health and could keep working, (2) he retired without considering his obligations or other financial options, (3) he can continue to pay maintenance using his investments, and (4) Bartlett is incapable of working due to numerous health issues. Upon consideration of all these factors, the court concluded that Quinn did not establish a substantial change in circumstances based on his voluntary retirement and, therefore, a modification of maintenance was not warranted. Nonetheless, the court ordered, at the request of Bartlett's attorney[8], that Quinn's maintenance payments should be offset by the amount of benefits Bartlett receives from Quinn's Social Security benefits. Accordingly, taking into account this offset, the court ruled that Quinn's maintenance obligation moving forward was to be $5064.10 monthly. Furthermore, the court ordered Quinn to pay all of Bartlett's reasonable and necessary fees incurred in the litigation.[9]

¶ 18    Subsequently, on December 29, 2020, Bartlett's counsel filed a full accounting that detailed the work performed and the full amount of paid and unpaid attorney fees and costs incurred during the course of litigation, for the period between August 26, 2019 and December 26, 2020. In the

---

[7]Bartlett did not testify with specificity regarding her anticipated mandatory annual distributions, but Quinn's counsel estimated Bartlett's mandatory distributions will be approximately $25,525 annually.

[8]While Bartlett repeatedly argues in her brief that the court *sua sponte* ordered this offset, it is clear from the transcript of the trial that, in asking for the court to deny the motion to terminate maintenance, Bartlett's counsel sought "for Lynne's permanent maintenance to be modified to $5,701.40 per month which is the amount of permanent maintenance she was awarded at the time – sorry – in October of 2009, less the Social Security she receives from Dennis in the amount of $1,428.60."

[9]On July 9, 2020, Bartlett filed a petition for interim and prospective attorney fees and costs, in which she sought $40,000.

ensuing proceedings, after considering the pleadings, the court ordered that the total amount of reasonable and necessary attorney fees and costs due to Bartlett was $73,271.09.

¶ 19   Additionally, the court determined that (1) Quinn owed Bartlett $18,000 in unpaid maintenance for the year 2020; (2) Bartlett, between 2018 and 2020, received Social Security benefits in the amount of $35,362.02, which offsets Quinn's obligation to Bartlett; and (3) Quinn was owed a credit in the amount of $17,365.20 against the $73,271.09 in attorney fees he was ordered to pay to Bartlett's attorney. In light of these findings, the court ordered Quinn to pay a total of $55,905.89 in attorney fees and costs to Bartlett.

¶ 20   Following each of these proceedings, Quinn filed a timely notice of appeal (one on December 14, 2020, one on January 1, 2021, and one on February 9, 2021). Quinn then moved, before this court, to consolidate appeal No. 1-20-1358 (filed December 14, 2020) with appeal Nos. 1-21-0076 (filed January 1, 2021) and 1-21-0137 (filed February 9, 2021). This court granted that motion and consolidated the three appeals.

¶ 21   III. ANALYSIS

¶ 22   On appeal, Quinn contends that (1) the trial court abused its discretion when it determined that no substantial change in circumstances had occurred and therefore denied his motion to reduce or terminate maintenance, and (2) the trial court erred in ordering him to pay over $73,000 in attorney fees to Bartlett.

¶ 23   A. Substantial Change in Circumstance

¶ 24   Quinn first argues that the trial court's finding that no substantial change had occurred in the parties' circumstances since the dissolution was erroneous and constituted an abuse of discretion[10]. He asserts that a substantial change did occur, based on his loss of income as a result

_____

[10]In their briefs before this court, both parties argue the correct standard of review is whether the trial court abused its discretion in finding no substantial change in circumstances. However, as detailed

of his retirement at age 70. Bartlett argues Quinn's retirement did not constitute a substantial change of circumstances as defined by the Marriage Act, because it was voluntary, he failed to acknowledge the severity of a permanent maintenance award, and retirement was contemplated at the time of the parties' divorce.

¶ 25    Pursuant to section 504(a) of the Marriage Act, a court, after considering all relevant factors, "may grant a maintenance award for either spouse in amounts and for periods of time as the court deems just." 750 ILCS 5/504(a) (West 2020). As provided by subsection 510(a-5) of the Marriage Act, an order for maintenance may only be modified or terminated upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a-5) (West 2020). Illinois courts have held that a " 'substantial change in circumstances' means that either the needs of the party receiving maintenance or the ability of the other party to pay that maintenance has changed." *In re Marriage of Dea*, 2020 IL App (1st) 190234, ¶ 18. Furthermore, where a modification has been previously sought, "the trial court is to consider only the facts that occurred since the last modification hearing and to alter the award only upon [a] showing of a substantial change in circumstances since that date." *In re Marriage of Anderson*, 409 Ill. App. 3d 191 (2011) (citing *In re Marriage of Connors*, 303 Ill. App. 3d 219, 226 (1984)).

¶ 26    The party pursuing modification of a maintenance award has the burden of demonstrating that a substantial change in circumstances has occurred. *In re Marriage of Dea*, 2020 IL App (1st) 190234, ¶ 18. A substantial change in circumstances must be proved by a preponderance of the evidence. *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 54 (see *In re Marriage of Stockton*, 401 Ill. App. 3d 1064, 1069 (2010)). "A proposition is proved by a preponderance of the evidence if it is proved more likely true than not true." *Id.* First, we determine whether the trial

---

below, we must determine if the trial court's finding was against the manifest weight of the evidence. *In re Marriage of Yabush*, 2021 IL App (1st) 201136, ¶ 28.

court's factual findings concerning a substantial change in circumstances are against the manifest weight of the evidence. *Id.* See *In re Marriage of Bates*, 212 Ill. 2d 489, 523 (2004) ("The standard of review of a support order is whether it is an abuse of discretion, or whether the factual predicate for the decision is against the manifest weight of the evidence."). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *People v. Sanchez*, 2021 IL App (3d) 170410, ¶ 25 (citing *People v. Deleon*, 227 Ill. 2d 322 (2008)); *In re Marriage of Yabush*, 2021 IL App (1st) 201136, ¶ 28.

¶ 27　　　　If the "court determines that there has been a substantial change in circumstances, it may modify the maintenance award, but it is not required to do so." *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 48 (citing *In re Marriage of Anderson*, 409 Ill. App. 3d at 203). Once a trial court has concluded that a substantial change in circumstances has occurred, it must then consider the factors set forth in sections 504(a) and 510(a-5) of the Marriage Act when deciding whether to modify the maintenance award. 750 ILCS 5/504(a), 510(a-5); *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009). Section 504(a) sets forth 14 factors the trial court shall consider, including, *inter alia*, each parties' income, property, needs, age, health, occupation, and future earning capacity, as well as the duration of the marriage and the standard of living established during the marriage. Additionally, section 510(a-5) directs the trial court to consider the following nine factors:

> (1) any change in the employment status of either party and whether the change has been made in good faith;
>
> (2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage *** and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage ***; and

(9) any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/510(a-5).

¶ 28        A trial court's determination regarding modification of maintenance will not be disturbed absent a clear abuse of discretion. *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 49. " 'The trial court has discretion to determine the propriety, amount, and duration of a maintenance award.' " *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 80 (quoting *In re Marriage of Reynard*, 344 Ill. App. 3d 785, 790 (2003)). An abuse of discretion occurs when the circuit court's " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' " *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum*, 235 Ill. 2d at

36). Moreover, it is well established that we defer to the trier of fact to determine "the credibility of witnesses and the weight to be given to their testimony," *People v. Feliciano*, 2020 IL App (1st) 171142, ¶ 125 (quoting *People v. Jordan*, 218 Ill. 2d 255, 274 (2006)), and we will not substitute our judgment for that of the fact finder. *In re Marriage of Anderson*, 409 Ill. App. 3d at 199.

¶ 29       As the trial court acknowledged, the retirement of an ex-spouse at a reasonable age can create a substantial change that thereby warrants a modification of maintenance. *In re Marriage of Brent*, 263 Ill. App. 3d 916, 922 (1994) (Illinois courts have held that a substantial change in circumstances warranting modification "may occur upon involuntary change or loss of employment, and voluntary change of employment made in good faith.") (citing *In re Marriage of Kowski*, 123 Ill. App. 3d 811, 814 (1984)). This determination must be made on a case-by-case basis. Here, the trial court conceded that Quinn's retirement, at the age of 70, was objectively reasonable, but noted that he had over a decade to plan for his retirement whilst considering his permanent maintenance obligation to Bartlett. The court acknowledged that relevant factors to consider "include his age, health, motives and timing of the retirement, ability to pay maintenance after the retirement, and the former spouse's ability to provide for herself." See *In re Marriage of Verhines and Hickey*, 2018 IL App (2d) 171034, ¶ 87 ("[R]educed income in retirement is but one of several factors to consider in determining whether there has been a substantial change in circumstances."); *In re Marriage of Schrimpf*, 293 Ill. App. 3d 246, 252 (1997) ("The relevant factors to consider include his age, health, and motives, and the timing of his ability to pay maintenance after retirement, as well as the former spouse's ability to provide for herself."). After considering all presented factors, the court here ruled that there was no substantial change in circumstances.

¶ 30    In making this determination, the trial court relied heavily on the language in the original judgment of dissolution regarding termination of Bartlett's maintenance award. While the court correctly recognized that Bartlett's maintenance award was permanent, with only four terminating events, the Marriage Act nonetheless provides for modification of maintenance if there is a substantial change in circumstances. There are several situations, some unavoidable and others foreseeable, that might necessitate a change in maintenance—unemployment, disability, drastic decrease in income, or retirement, to name a few. It is for these very reasons the Marriage Act not only contemplates that there may be a substantial change in circumstances that necessitates a modification but also allows for such instances. Although the inquiry of whether voluntary retirement is considered a substantial change in circumstances is case specific, the absence of retirement as a terminating event in the original marriage dissolution order does not preclude retirement from being considered a substantial change in circumstances. See *In re Marriage of Waldschmidt*, 241 Ill. App. 3d 7 (1993); *In re Marriage of Brent*, 263 Ill. App. 3d 916, 922 (1994). Having so determined, we now turn to the specifics of the instant case.

¶ 31    The evidence presented in this case was sufficient to prove by a preponderance of the evidence that Quinn's circumstances have substantially changed. At the time of the hearing, Quinn was 70 years old and Bartlett was 68 years old. In support of his petition to modify or terminate his maintenance payments, Quinn presented evidence that his income had significantly decreased since the October 2009 modification of maintenance order was entered. Both parties presented extensive evidence regarding their income, and Bartlett conceded that Quinn's income had decreased. Bartlett does not contest that Quinn's income was $274,000 in October of 2009 and that Quinn retired in July of 2020, at which time he no longer had any employment income. Quinn further testified that his income had been reduced on May 18, 2020, prior to his retirement, to

$238,000, and Bartlett does not contest this fact. At the time of trial, after Medicare deductions, Quinn received a monthly Social Security income of $3239, and a small amount of dividend income. He did not receive a pension. Quinn's cash equivalents totaled $44,539; his equities and stock totaled $102,329; and the summary total of his retirement assets was $1,105,219.

¶ 32        Conversely, Bartlett was not working in 2009 and her monthly income consisted of $6500 in maintenance payments, $2600 in tax-free disability payments, and $3000 in child support payments. She returned to the workforce in 2011[11] as a bank teller making $11.20 an hour. After approximately two years, she then began working as a legal specialist, making approximately $60,000 annually. She then worked for ten months as an attorney. As outlined earlier, once she was no longer able to work, Bartlett received monthly disability payments in the amount of $3100 from December of 2016 through November of 2019. At the time of trial, she received monthly Social Security benefits in the amount of $1284. Additionally, she was receiving $6500 in maintenance payments, $2600 in tax-free disability payments, a small amount of dividend income, and $1300 from her children monthly. The total of Bartlett's cash equivalents was $19,110.94; her equities and stock totaled $25,898.32; and the sum of her retirement assets totaled $750,464.04.

¶ 33        Bartlett contends that Quinn's retirement was foreseeable and was therefore contemplated as of the entry of the modified judgment order in 2009 and, accordingly, it cannot be characterized as a substantial change in circumstances. See *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 18 ("[T]o warrant termination, the 'change' must not have been contemplated when permanent maintenance was ordered"). However, Bartlett's contention lacks merit. At the time of the dissolution, it was clearly contemplated that Quinn would continue working and that Bartlett was without any viable employment income. Contrary to this expectation, Bartlett was thereafter

_____

[11]In its November 30, 2020 order, the circuit court stated Bartlett worked from 2014 to 2017. Her trial testimony and appellate filings indicate she worked from 2011 through the end of 2016.

employed by Chase Bank for nearly five years—until her numerous health issues rendered her unable to work. Quinn continued his employment as an attorney at Mayer Brown for another 11 years, until, according to his testimony, he began making small mistakes at work and noticed cognitive decline. While the trial court, in its order denying modification, stated that Quinn's "retirement in the near future had to have been contemplated [in 2009]," the record before us on appeal does not support that the circuit court considered Quinn's retirement when it entered its October 2009 order modifying maintenance. This modification was ordered in response to an unexpected 25% decrease in Quinn's salary. As demonstrated by the entry of this order, it is clear that a marked decrease in his income, such as with retirement, was not contemplated either at the time of the original judgement of dissolution of marriage or when the modification was ordered.

¶ 34      Bartlett next argues that Quinn remains able to satisfy his current permanent maintenance obligation because he is still physically able to work and voluntarily chose to retire, whereas she is unable to work. In addressing Quinn's future ability to work, the court noted the prevalence of "substance abuse and other mental health challenges in the legal profession are often significant," but mentioned Quinn's lack of "actual proof" that he was suffering from any sort of diminished capacity or ability and pointed out that there was no evidence Quinn sought counseling to address his heavy drinking. Counter to Bartlett's contention, as noted above, Quinn testified that he chose to retire because he was living an increasingly unhealthy lifestyle, was drinking heavily, was noticing memory and concentration problems at work, and was beginning to make mistakes in his work. Bartlett's inability to work and provide earned income for herself is certainly imperative to consider. Necessarily, this fact must play an important role in determining whether to allow for a modification of maintenance and in deciding the appropriate amount of a maintenance award. But

so too is Quinn's self-reported difficulties in continuing to competently represent his clients and maintain his health as he ages.

¶ 35        Bartlett relies on *In re Marriage of Bernay*, 2017 IL App (2d) 160583, *In re Marriage of Schrimpf*, 293 Ill. App. 3d 246, and *In re Marriage of Waller*, 253 Ill. App. 3d 360 (1993) to support her assertion that even good-faith voluntary retirement cannot satisfy the burden of establishing a significant change in circumstances. It is well settled that, when a court determines maintenance payments, it "should consider whether a party's situation is necessary or incurred by choice." *Shen*, 2015 IL App (1st) 130733, ¶ 145 (citing to *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1007 (2008)). However, as detailed above, depending on the specific facts of each case, voluntary retirement can constitute a significant change in circumstances. Here, as the trial court observed, Quinn appeared to be under the erroneous assumption that his maintenance obligation would immediately cease once he no longer had "earned income." In fact, Quinn went so far as to testify he was "anticipating that I will have an order that terminates maintenance, if that's what you mean." While the trial court did not make any explicit findings that Quinn's retirement was in bad faith, it recognized, as do we, that this testimony is troubling. It is clear that "[e]mployment changes that are voluntary must be made in good faith and not prompted by a desire to avoid maintenance obligations." *In re Marriage of Waldschmidt*, 241 Ill. App. 3d at 13.

¶ 36        Nevertheless, in the instant case, we find that the trial judge's implied determination with respect to whether Quinn's retirement was in good faith was against the manifest weight of the evidence. Despite his misguided statement, the evidence presented at hearing does not indicate that Quinn retired *for the purpose of* evading maintenance obligations. Rather, it appears he was under an erroneous assumption that retiring would have the added benefit of terminating his maintenance obligation. This testimony, on its own, does not support a finding that Quinn's

decision to retire at 70 years old was predicated in bad faith. Based on the totality of evidence presented, it is clear that Quinn retired in good faith, where he (1) had worked long past average retirement age; (2) worked long hours in a stressful environment; (3) noted his varied, legitimate reasons for choosing to retire; and (4) had previously paid nearly $1 million in maintenance to Bartlett—a plain indication he had not tried to evade his obligation.

¶ 37    Furthermore, in finding that Quinn failed to demonstrate a substantial change in circumstances, the trial court incorrectly interpreted the financial evidence presented. First, the court noted that while Quinn's retirement assets totaled $1,105,219, he had inherited an *additional* $502,303.75 from his mother. However, Quinn explained that the $502,303.75 inheritance was included in the total accounting of his assets provided to the trial court. Second, the court noted that, at age 72, Quinn will receive "an additional amount" of approximately $40,336 yearly in required minimum distributions. As Quinn points out, these distributions are not *in addition to* his retirement assets. Rather, they are required withdrawals from his retirement assets. Here, it appears the required minimum distributions at issue were subject to impermissible double counting for purposes of establishing support. See *In re Marriage of Dahm-Schell*, 2021 IL 126802, ¶ 63 ("Our holding today makes clear that all income must be taken into consideration when setting support, but income may be considered only once when doing so."). These facts do not demonstrate that the trial court appropriately calculated Quinn's financial assets as a factor in whether there was a substantial change in circumstances when weighing his ability to continue to pay $6500 in monthly maintenance.

¶ 38    Quinn provided unrebutted testimony that he voluntarily retired at age 70—long past the average age of retirement—because he was facing health issues as a direct consequence of his stressful work environment, he was noticing cognitive decline, and he was making mistakes at

work. Further, Quinn's proffered financial affidavits and his retirement assets supported his assertion that—at the current rate of maintenance—he would require liquidation of his retirement assets and would be, within several years, left with less financial resources than Bartlett, thus affecting Quinn's financial stability in the future. Accordingly, considering the totality of the evidence, we must find that the trial court's ruling that Quinn failed to establish a substantial change in circumstances is against the manifest weight of the evidence. Since we have determined that the trial court should have concluded that there was a substantial change in circumstances, we need not proceed to the second step of analyzing what a proper amount of maintenance would be, but instead leave that determination to the trial court. *Cf. In re Marriage of Armstrong*, 346 Ill. App. 3d 818, 823 (2004) ("Only after determining the threshold issue of whether a substantial change in circumstances has occurred can a court consider modifying a child support order.").

¶ 39       Lastly, it is worth noting that—in explaining its reasoning behind its finding that there was no substantial change in circumstance—the trial court went on to state that "the legal profession allows one to work as long as possible in that it is not physical labor, and thus is not necessarily impacted by age. Indeed, many septuagenarians and octogenarians continue to work in the profession. It can even be said that their abilities increase with age and experience rather than the other way around." However, we find the trial court's statement to be problematic for several reasons. Although the legal profession requires a different skill set from manual labor, in that it is often not particularly physically challenging, and some attorneys may choose to work well beyond what is considered a "reasonable" retirement age, those who do not wish to do so should not be encouraged to work until they are no longer able. In a field where mental acuity is of utmost importance, we should take care to ensure that we do not encourage individuals to work well into their seventies and eighties when—by their own admissions—they are beginning to notice

cognitive decline and are making mistakes at work. Moreover, just because an individual is physically or mentally able to work until their dotage does not mean they should be forced to forgo a chance at retirement.

¶ 40                                            B. Attorney Fees

¶ 41         Quinn next argues the trial court abused its discretion by awarding Bartlett attorney fees, since Bartlett had the means to afford an attorney, given the court's order preserving permanent maintenance. Bartlett counters that she consistently presented evidence throughout trial of her inability to pay her legal fees.

¶ 42         When addressing the appropriateness of the trial court's award of attorney fees, we again consult the Marriage Act. Section 508(a) of the Marriage Act allows for an award of attorney fees and costs. 750 ILCS 5/508(a) (West 2020). It states, in relevant part:

> (a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his or the other party's costs and attorney's fees. *** Awards may be made in connection with the following: ***
>
>> (2) The enforcement or modification of any order or judgment under this Act. 750 ILCS 5/508(a), (a)(2) (West 2020).

¶ 43         A party who seeks " 'an award of attorney fees must establish [their] inability to pay and the other spouse's ability to do so.' " *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 182710, ¶ 69 (quoting *In re Marriage of Schneider*, 214 Ill. 2d 153, 174 (2005)). But a party seeking fees is not required to "divest her capital assets [citation], deplete her means of support, or undermine her economic stability [citation], in order to pay [such fees]." *In re Marriage of*

*Weinberg*, 125 Ill. App. 3d 904, 919 (1984). Plainly, "the inability to pay standard was never intended to limit awards of attorney fees to those situations in which a party could show a $0 bank balance." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19. Instead, a court determines a party is unable to pay if it finds, after considering all relevant statutory factors, "that requiring the party to pay the entirety of the fees would undermine his or her financial stability." *Id.* As the awarding of fees is within the trial court's discretion, a reviewing court will not reverse a trial court's judgment awarding attorney fees unless it finds that the court abused its discretion. *Shen*, 2015 IL App (1st) 130733, ¶ 96. An abuse of discretion occurs when the trial court applies the wrong legal standard, *Id.*, or where the circuit court's "ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court." (Internal quotation marks omitted). *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum*, 235 Ill. 2d at 36).

¶ 44        Quinn does not dispute his ability to pay attorney fees, but rather, asserts that Bartlett has the ability to pay her own attorney fees. Further, Quinn argues the court did not properly consider all relevant factors in finding that, "[b]ased on Lynne's inability to pay legal fees, and Dennis's ability to pay, he shall be responsible for all of Lynne's reasonable and necessary legal fees incurred in this litigation." However, in its award of attorney fees, the court specifically noted Bartlett's inability to work and her chronically poor health. In addition, the court considered each parties' total assets, and the fact that Bartlett had recently withdrawn $65,000 from her retirement funds to pay attorney fees and various debts. Considering these facts, we cannot say the trial court abused its discretion when it found that Bartlett was unable to afford her attorney fees, as it would likely require liquidation of her retirement assets, as evinced by her earlier removal of $65,000 to pay attorney fees and various debts. This would, in turn, affect Bartlett's financial stability in the future. Accordingly, we affirm the circuit court's award of attorney fees to Bartlett.

¶ 45                                    IV. CONCLUSION

¶ 46         Based on the foregoing, we reverse the trial court's finding that Quinn's retirement did not

constitute a substantial change in circumstances. As Quinn did demonstrate a substantial change

in circumstances, the trial court should proceed to the second step of analyzing what a proper

amount of maintenance should be. We affirm the trial court's award of attorney fees in favor of

Bartlett.

¶ 47         Affirmed in part, reversed in part, and remanded with directions.